**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gary Wayne JOHNSON,
Defendant–Appellant.**

**No. 89–6345.**

United States Court of Appeals,
Tenth Circuit.

Aug. 14, 1990.

Submitted on the Briefs:[1]

Timothy D. Leonard, U.S. Atty., and Frank Michael Ringer, Asst. U.S. Atty., Oklahoma City, Okl., on the briefs, for plaintiff-appellee.

William P. Earley, Asst. Federal Public Defender, Oklahoma City, Okl., on the briefs, for defendant-appellant.

Before ANDERSON and BRORBY, Circuit Judges, and PARKER,* District Judge.

BRORBY, Circuit Judge.

Mr. Johnson appeals his conviction on two counts of committing theft from an interstate shipment in violation of 18 U.S.C. § 659, and he further appeals the sentences.

### I.

Mr. Johnson first asserts that "the evidence adduced by the defense, coupled with a lack of direct evidence on the issue of the identity of the person who actually took the items, render[s] his convictions suspect and warrant[s] reversal." We read this contention as an assertion that insufficient evidence exists to establish that Mr. Johnson committed the crimes.

When there exists a claim of insufficient evidence to support the criminal conviction, we review the evidence, both direct and circumstantial, in the light most favorable to the government. We then decide if there is sufficient proof from which a reasonable jury could find guilt beyond a reasonable doubt. *United States v. Levario*, 877 F.2d 1483, 1485 (10th Cir.1989).

The Arkansas Freightway Terminal located in Oklahoma City was broken into on December 11, 1988. Entry into the terminal grounds was made by cutting off a lock attached to the gate. This lock was replaced with a lock from an unknown source. Fifty RCA camcorders with a value of $47,400 and four JVC stereo systems valued at $2,805 were stolen from two separate trailers located within the terminal. All of these goods were part of an interstate shipment in route from Houston, Texas, to Weatherford, Oklahoma. The stolen stereo equipment was located in a trailer at door 18 of the terminal and the stolen camcorders were located in a trailer at door 49 of the terminal.

We now turn our attention to the evidence before the jury which tended to show that Mr. Johnson was the person who stole the camcorders and stereo equipment. Mr. Webb testified that he was a supervisor at the terminal and that Mr. Johnson was then employed at the terminal. Mr. Webb stated that Mr. Johnson knew where the stereo equipment was located because Mr. Johnson had handled this stereo equipment on Friday, December 9. Mr. Dearing testified that in mid-December he purchased a camcorder from Mr. Johnson for $300 or $400. Mr. Arnold testified that Mr. Johnson delivered 37 camcorders and two stereos to the home of Mr. Arnold between 11:00 and 12:00 in the evening on December 11; that Mr. Johnson delivered these items in an orange 1970 or 1971 Chevrolet pickup which belonged to Mr. Johnson's brother; and that Mr. Johnson told Mr. Arnold that he (Mr. Arnold) could sell the camcorders and keep all monies which Mr. Arnold received over $300–350 per unit. Agent Cross testified that on December 16 he received permission from Mr. Johnson's brother to search the pickup and that he found in the pickup a bolt cutter and boxes which came from the terminal. Mr. Johnson's brother denied knowledge of the bolt cutter, and testified that he had loaned his

---

**1.** After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R.

34.1.9. The cause is therefore ordered submitted without oral argument.

* The Honorable James A. Parker, United States District Judge for the District of New Mexico, sitting by designation.

pickup to the defendant on the evening of December 11. Melody Johnson, the ex-wife of defendant Johnson, testified that on December 11 she and Mr. Johnson had gone to a flea market and Mr. Johnson was looking at bolt cutters. Mrs. Johnson further testified that later in December the defendant bought her a car and paid $3,500 cash for it and that he also bought her furniture for $1,054.70. Mrs. Johnson also testified that she found a set of keys and gave them to the FBI. The FBI agent subsequently found that one of these keys opened the new lock that had been placed on the terminal gate. By stipulation it was admitted that the bolt cutters found in the brother's pickup were the ones used to cut the lock found on the ground near door 18 of the terminal.

■ The evidence submitted to the jury and the inferences to be drawn therefrom clearly provide substantial support for the jury's verdict. Mr. Johnson was an employee of the terminal and knew where the stolen equipment had been located. Mr. Johnson sold some of the recently stolen property to Mr. Dearing and delivered a significant amount of the stolen property to Mr. Arnold. The bolt cutters found in the brother's pickup were the ones used to cut one of the terminal locks, and the boxes found in the pickup came from the terminal. Mr. Johnson had the use of the pickup when the thefts were committed. Mrs. Johnson found in the home she shared with Mr. Johnson a key to the lock that had been placed on the east gate to the yard after the original lock had been cut off.

The defendant testified and contradicted the testimony of nearly all of the government's witnesses. The jury heard the testimony and obviously chose not to accept the defendant's. The assessment of the credibility of the witness is within the sole discretion of the jury. *United States v. Espinosa*, 771 F.2d 1382, 1391 (10th Cir.), *cert. denied*, 474 U.S. 1023, 106 S.Ct. 579, 88 L.Ed.2d 561 (1985).

There can be no doubt the evidence was sufficient to sustain the conviction.

## II.

Mr. Johnson was sentenced to 37 months on each count to run concurrently.

The sentence was based upon a total offense level of 17 and a criminal history category of III. The total offense level was calculated, in part, by increasing the base offense level by 2 levels. This increase was based on the sentencing court's finding that the offense involved more than minimal planning. § 2B1.1(b)(4).[2]

The presentence report, in particular paragraph 13 thereof, stated that the base offense level should be increased because the offense involved more than minimal planning. The presentence report cited Mr. Johnson's procurement and use of bolt cutters, avoidance of the alarm system and knowledge of which two of fifty trailers to burglarize in support of its conclusion that the offenses involved more than minimal planning. Mr. Johnson's response did not challenge these facts but rather argued that nothing indicated that "the theft involved any in-depth thought or special skill."

At the sentencing hearing the court asked counsel for Mr. Johnson if he had any presentation concerning his objections. Defense counsel replied that he had no evidence to offer and the court "could probably rule on based on the testimony at trial." The court overruled the objections. Mr. Johnson then had nothing to say in response to the district court's invitation. Counsel for Mr. Johnson gave a short argument which did not touch upon this point and the court imposed sentence.

Mr. Johnson first complains that the district court failed to make factual findings and then argues that the term "more than minimal planning" as defined in the Sentencing Guidelines should not be applied in the instant case.

**2.** Section 2B1.1(b)(4) states as follows: "If the offense involved more than minimal planning, increase by 2 levels."

We first address Mr. Johnson's argument that the district court made no factual findings. In this case the presentence report increases the offense level for "more than minimal planning" due to the existence of three factors, the procurement and use of the bolt cutters, the avoidance of the alarm system, and the prior knowledge of which two of the fifty trailers contained the merchandise. Mr. Johnson's response neither denied nor challenged these facts but simply asserted that the theft involved no in-depth thought or special skill. The district court then gave Mr. Johnson the opportunity to present evidence, which was declined. Mr. Johnson's counsel then addressed the court stating: "[W]ith respect to presenting any evidence, the arguments on minimal planning ... are essentially legal arguments." The district court then stated: "[T]he objections of the defense are overruled."

■ Normally the district court should set forth its specific factual findings. However, in the instant case the facts utilized by the district court in adjusting the offense levels are listed in the presentence report and are clear and beyond doubt. Moreover, the court adopted those facts in its Statement of Reasons for Imposing Sentence. Mr. Johnson has made no claim that these were not the facts utilized by the court nor has he made any claim that he was misled. It is significant to note that Mr. Johnson never challenged the factual accuracy of the information contained in the presentence report. Only when the defendant challenges the factual accuracy of this report does Fed.Rules Crim.Proc. Rule 32(c)(3)(D) require the court's findings to be reduced to writing.

We now address whether these facts are adequate as a matter of law to increase the offense level for "more than minimal planning."

■ In reviewing an assertion that the district court's application of the guidelines to the facts is erroneous, we must accept the factual findings of the district court unless they are clearly erroneous, and we must give due deference to the district court's application of the guidelines to the facts. 18 U.S.C. § 3742(e). We will reverse only if we are left with a definite and firm conviction that a mistake has been committed. *United States v. Beaulieu*, 893 F.2d 1177, 1182 (10th Cir.), *cert. denied* — U.S. ——, 110 S.Ct. 3302, 111 L.Ed.2d 811 (1990).

■ Applying this standard of review, we first find there is no controversy concerning the facts found by the district court; indeed, Mr. Johnson accepts the facts. In looking at the application of the guidelines, we look first to the plain language of the guidelines. The commentary defines the term "more than minimal planning" as "more planning than is typical for commission of the offense in simple form." In the present case the district court adopted the presentence report findings that: (1) advance knowledge was obtained in order to know which two of the fifty trailers had the goods the defendant desired to steal; (2) bolt cutters had to be procured in advance; (3) an alarm system had to be avoided. Combining these factors, it becomes obvious that a plan was formulated and implemented. The plan involved identifying the goods and their location, the necessity for and the obtaining of the necessary tools to gain entry—not only into the freight terminal but into the trailers, and the eluding of an alarm system which was designed to deter such thefts. Such activity clearly evidences more than "minimal planning" as defined by the Sentencing Guidelines.

### III.

■ Mr. Johnson next asserts that the district court erred by applying the aggravating role adjustment in its computation of his sentence.

Section 3B1.1(c) of the Sentencing Guidelines, which is entitled "Aggravating Role," provides that the offense level will be increased by two levels if the defendant was an "organizer, leader, manager or supervisor in any criminal activity."

Paragraph 14 of the presentence report provides:

Adjustment for Role in the Offense: The investigative reports clearly identify the defendant as the primary organizer and most culpable participant in the instant offense. Pursuant to 3B1.1(c), a two point enhancement is warranted.

Mr. Johnson responded to this portion of the Presentence Report by arguing that Mr. Arnold was as culpable as Mr. Johnson. He asserted that Mr. Arnold received at least one-half of the proceeds of the crime, actively sold some of the stolen goods, and was involved in the concealing of the stolen goods from the authorities.

Again Mr. Johnson complains of the district court's lack of factual findings. The development of this point before the district court proceeded as did the minimal planning issue. Mr. Johnson never contested the facts and contents himself with arguing that the facts do not warrant an increase. A fair reading of the record leaves no doubt as to the facts utilized by the parties and the court. Likewise, this court has no doubt as to the facts found by the district court. This court will seldom affirm a sentencing decision where the district court fails to announce what facts influenced its decision. The instant case is an exception due only to the fact that the specific facts considered by the court were clear beyond all doubt. Again, it is important to note that no factual challenge was made. The facts were clearly set forth in the presentence report and adopted by the trial court, and these facts were never controverted.

A sentencing hearing was held, which has been summarized under the prior discussion, and the district court overruled Mr. Johnson's objection to this increase in the offense level.

On appeal Mr. Johnson argues that this increase cannot apply unless the offense was committed by more than one participant. Mr. Johnson asserts that, under the government's theory and as shown by the facts at trial, Mr. Johnson acted alone in committing the theft and, assuming that Mr. Arnold was an accessory after the fact, Mr. Arnold's conduct was no more significant than Mr. Johnson's.

There was ample evidence introduced during the course of the trial to establish Mr. Johnson as the organizer of "criminal activity." Mr. Johnson planned and executed the crime. He recruited Mr. Arnold to "fence" the goods. He retrieved the unsold camcorders from Arnold. He kept some of the stolen goods and sold some himself. It is clear that Mr. Johnson had and exercised the decision-making authority, that Mr. Johnson was the key participant, and that Mr. Johnson recruited an accomplice and exercised control over the stolen goods. These factors are specifically mentioned in the guidelines as examples of being an organizer or supervisor.

Again, Mr. Johnson does not contest the facts; rather, he contests the application of the Sentencing Guidelines to the facts. Under these circumstances we must give due deference to the district court's application of the guidelines to the facts, reversing only if we are left with a definite and firm conviction that a mistake has been committed. In the instant case there can be no doubt that Mr. Johnson planned and executed the thefts, just as there can be no doubt that he organized and controlled the disposition of the stolen property. Mr. Arnold's role was that of helping to sell the stolen goods. The district court's determination that Mr. Johnson was an organizer, leader, manager or supervisor of the criminal activity was correct and should be affirmed.

In summary, we hold that the evidence is sufficient to sustain the conviction and the sentences were properly increased on the basis of Johnson's more-than-minimal planning and his role in the offense.

The decisions of the district court are AFFIRMED.