**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Francis R. GERRY, Defendant–Appellant.**

**No. 91–5333.**

United States Court of Appeals, Sixth Circuit.

Submitted Oct. 28, 1991.

Decided April 2, 1992.

---

Ed Holt, Asst. U.S. Atty. (briefed), Jerry G. Cunningham, U.S. Atty., Office of U.S. Atty., Knoxville, Tenn., for plaintiff-appellee.

James H. Varner, Jr. Eshbaugh, Simpson & Varner, Knoxville, Tenn., (briefed), for defendant-appellant.

Before: NORRIS and SILER, Circuit Judges; and WELLFORD, Senior Circuit Judge.

## ALAN E. NORRIS, Circuit Judge.

Francis R. Gerry appeals the sentence imposed by the district court. Pursuant to an agreement with the government, defendant pleaded guilty to one count of burglary in exchange for the dismissal of three additional counts. Gerry admitted stealing a purse from a car parked at a national park. At issue is the trial court's decision to impose two-level sentencing increases for possession of a dangerous weapon and because the crime required "more than minimal planning." For the reasons that follow, we affirm.

## I.

On September 8, 1990, Ranger Britton Stott observed defendant walking in a parking area within the Great Smoky Mountains National Park in Tennessee, "zig-zagging back and forth among the cars," and looking inside them. Stott watched as defendant took a beach towel from what proved to be his own vehicle and walked toward a Buick station wagon. Gerry removed a twisted, wire coat hanger from the towel and inserted it into the Buick's door window housing, setting off a burglar alarm. He retreated toward his car but returned to the Buick several minutes later. He again put the coat hanger into the window, and set off the alarm a second time. After gaining entry, Gerry leaned into the Buick "as if reaching for something" and then returned to his car, carrying an article wrapped in the towel. At this point, Stott had observed defendant's conduct for approximately thirty minutes.

This surveillance continued as defendant drove to another parking lot, exited his car with the article wrapped in the towel, walked to the back edge of the parking lot, and threw the article over a bank. Gerry then returned to his car and drove south on U.S. 441 before pulling into another parking area, where he was observed by two other rangers as he left his vehicle to change his clothes.

After driving off again, defendant was stopped and his automobile was taken into custody. Rangers discovered an unloaded .44 caliber automatic firearm and a bag of .44 caliber ammunition under the rear seat of the vehicle, which had to be lifted out for access to the weapon. Ranger Stott recovered a purse belonging to the owner of the Buick from the area where defendant was observed throwing an article over the bank. One hundred dollars was missing from the purse.

The district judge adopted the probation office's recommendation to impose two-level increases for both "more than minimal planning" and possession of a dangerous

weapon and, accordingly, sentenced defendant to twenty-seven months' imprisonment under the Sentencing Guidelines.

## II.

### A. More Than Minimal Planning

At sentencing, the trial judge observed that the planning issue was "a close call." U.S.S.G. § 2B2.2(b)(1), the guideline applicable to burglaries of structures other than residences, provides: "If the offense involved more than minimal planning, increase by 2 levels." We review the district court's factual finding for clear error. *United States v. Cianscewski*, 894 F.2d 74, 82 (3d Cir.1990).

Defendant disputes the district court's determination because, according to defendant, his conduct involved the minimum amount of planning possible in order to commit the crime for which he was convicted. He argues that adoption of the district court's reasoning would mean that a two-level increase would be inapplicable only in the event of a burglary involving a "target of opportunity," such as an open car window happened upon by a burglar. We disagree.

"More than minimal planning" is defined in the guidelines as "more planning than is typical for commission of the offense in a simple form. 'More than minimal planning' also exists if significant affirmative steps were taken to conceal the offense." U.S.S.G. § 1B1.1, comment. (n.1(f)).

The application notes provide several examples of activity that would constitute more than minimal planning, including "disabling an alarm system" in a commercial burglary, "wearing a ski mask to prevent identification" during an assault, and "fashioning a special device to conceal the property"—as contrasted with merely going to a secluded area of a store to conceal an item in a clothing pocket—in a theft. In addition, the notes provide that " '[m]ore than minimal planning' is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune. Conse-

quently, this adjustment will apply especially frequently in property offenses."

■ Contrary to defendant's characterization of the facts, there was considerable evidence of planning. He was observed walking through the parking lot for thirty minutes prior to the theft, looking into a number of cars until he found a suitable target. He twice attempted to gain entry into the Buick, not giving up the attempt even after setting off the alarm the second time; he brought with him a contorted wire hanger to unlock the car and a towel to conceal both the hanger and his loot; he drove to a more remote parking lot in order to dispose of the purse; and he drove to yet another area to change clothes. "Combining these factors, it becomes obvious that a plan was formulated and implemented." *United States v. Johnson*, 911 F.2d 403, 406 (10th Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 1004, 112 L.Ed.2d 1087 (1991) (holding that more than minimal planning existed where advance knowledge was obtained to locate targeted goods, where an alarm system had to be avoided, and where tools were used to gain entry); *see also United States v. Culver*, 929 F.2d 389, 393 (8th Cir.1991) (defendant's purchase of disguises to conceal identity is sufficient to establish more than minimal planning). Under these circumstances, we cannot say that the district court committed clear error in finding that the burglary involved more than minimal planning.

### B. Possession of a Dangerous Weapon

■ Defendant also appeals from the two-level increase imposed pursuant to U.S.S.G. § 2B2.2(b)(4), part of the burglary guidelines, which states: "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels."

Although a .44 caliber firearm and ammunition were found under the rear seat of his automobile, defendant contends that the two-level increase is inappropriate because the weapon was not sufficiently connected with the offense. He cites the application note to a similar guideline for offenses involving drugs, which provides: "The enhancement for weapon possession reflects

the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, comment. (n.3). Defendant argues that the potential for violence is substantially reduced in a "property type offense," as contrasted with a drug offense. He concedes that the two-level increase would have been justified had this been a drug-related crime.

The wording of section 2D1.1(b)(1), the drug crime guideline, is different from that of the guideline at issue here. The former calls for a two-level increase only if a dangerous weapon was possessed "during commission of the offense," and the application note elaborates on the need for some connection between the crime and the weapon possession. In contrast, nothing in the burglary guideline at issue indicates that such a connection is required for the enhancement.

The commentary to the burglary guideline indicates that "[w]eapon possession, but not use, is a specific offense characteristic because use of a weapon (including to threaten) ordinarily would make the offense robbery. Weapon use would be a ground for upward departure." U.S.S.G. § 2B2.2, comment. (backg'd.). Accordingly, the issue for our resolution is whether the weapon was possessed, not whether it was "used" or "connected with the offense."

■ We are not persuaded by defendant's argument that the connection between the firearm and his criminal conduct is too remote to be within the contemplation of the guidelines. The potential for violence under the circumstances that surround burglaries cannot be considered remote. And, under those circumstances, the potential for use of an available firearm is greatly enhanced. The guidelines' requirement of possession, as opposed to mere ownership, ensures that the enhancement will not apply where a firearm is located at a remote distance from the scene of the criminal conduct.

Here, resort to the firearm was not remote in terms of either distance or concept. The firearm was under defendant's control and was readily accessible to him. He was frequently in or near his car and used it as his base of operations over a considerable length of time. Accordingly, the potential that he would attempt to use the weapon if surprised in the course of the burglary was not as remote as defendant would have us believe.

Under the circumstances of this case, then, the district court did not err in concluding that defendant possessed the dangerous weapon and increasing his score by two levels.

III.

For the reasons stated above, we affirm the sentence imposed by the district court.

WELLFORD, Senior Circuit Judge, concurring in part and dissenting in part:

I concur in parts I and IIA of the opinion in this case.

Although it is a close issue, I respectfully dissent from the conclusion reached as to part IIB, the increase in the guidelines level imposed for possession of a dangerous weapon. I would here conclude, under all the circumstances, that the connection between the theft from an unoccupied car and the location of the unloaded firearm underneath the back seat of the defendant's car is too tenuous or unconnected with the single offense, which is the subject of the plea agreement, to warrant the two point weapon enhancement. I would hold, rather, that the proper interpretation of the guidelines here would not involve "possession" by Gerry of such a weapon which was located in a vehicle some distance away from the theft under a seat which had to be *removed* in order to gain access to the weapon.

I, therefore, dissent from part IIB, and I would remand for resentencing in this respect only.