**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**William Clifton LUDLOW,**
**Defendant–Appellant.**

**No. 00–5273.**

United States Court of Appeals,
Sixth Circuit.

Aug. 9, 2001.

Before BOGGS and CLAY, Circuit Judges; and ROBERTS, District Judge.*

PER CURIAM.

William Ludlow pled guilty to a violation of 18 U.S.C. §§ 7(3), 13, for entering a building and committing a theft on land acquired for the use of the United States. Ludlow was sentenced to 41 months in prison. This sentence was determined in part through the application of a two-level sentencing enhancement for more than minimal planning. USSG § 2B2.1(b)(1). Ludlow appeals the use of this enhancement. We affirm Ludlow's sentence.

I

On May 27, 1997, Glen Lindsay reported to the United States Naval Investigative Service that his home on the Millington Naval Air Station ("the NAS") had been burglarized. Investigation disclosed that the thieves had stolen a 27–inch color television, a stereo, and some other miscellaneous items. The home was entered through the dining room window, and numerous fingerprints were left behind.

---

* The Honorable Victoria A. Roberts, United States District Judge for Eastern District of Michigan, sitting by designation.

That day, three witnesses (other military personnel) observed a white male, later identified as Kenneth Ryals, and a black male, later identified as the defendant, taking the relevant items from Lindsay's residence to a pick-up truck. They attempted to prevent the thieves from leaving, but the truck took evasive action and escaped from the NAS. The witnesses did, however, record the Tennessee license plate of the suspicious vehicle. Armed with this information, the Millington Police Department soon apprehended Ryals with the truck, and he was turned over to Navy investigators.

Under questioning at the NAS, Ryals admitted his part in the burglary and identified Ludlow as the other participant. Ryals said that he had obtained use of the truck from his uncle by telling him that Ryals needed it to "look for a job" in Memphis. Ryals told investigators that he had at first thought Ludlow had permission to enter Lindsay's residence and remove property. Ryals claimed that he only realized he was participating in a theft when the witnesses attempted to stop the pair from leaving, and Ludlow told him not to stop. The two men later split the profits from their venture, after Ludlow had pawned the television and the stereo at two different pawn shops.

Ludlow was indicted in November 1997 and released on bond in May 1998. When the defendant failed to appear for his court date in July 1998, an arrest warrant was issued. After spending nearly a year on the lam, Mr. Ludlow was captured in Baltimore in June 1999. Following his plea of guilty,[1] the district court conducted a sentencing hearing in February 2000. During this hearing, the district court concluded that a more than minimal planning enhancement was warranted.[2] The court acknowledged, along with both parties, that Ludlow had committed a "simple burglary." However, the court pointed out that "residential burglary by its nature is not just simply an impulsive act." The court described the steps necessary to carry out a residential burglary and also discussed the fact that Ludlow had "continued" his criminal activity by pawning the stolen goods.

## II

### Standard of Review

■ In applying the Sentencing Guidelines, the district court makes factual findings under a preponderance of the evidence standard. *United States v. Rodriguez*, 896 F.2d 1031 (6th Cir.1990). "We review the district court's 'more than minimal planning' finding for clear error." *United States v. Moore*, 225 F.3d 637, 642 (6th Cir.2000). A factual finding is clearly erroneous when, though there is evidence to support the finding, the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *United States v. Ables*, 167 F.3d 1021, 1035 (6th Cir.1999) (citations omitted). The 1998 version of the Sentencing Guidelines was used to sentence the defendant.

### The Use of USSG § 2B2.1(b)(1)

As explained in the Guidelines, a "more than minimal planning" enhancement is warranted when there is "more planning than is typical for commission of the of-

---

1. Ludlow also pled guilty to failure to appear under 18 U.S.C. § 3146(a)(1), for which he received an additional sentence of six months in prison, consecutive to his other sentence. This charge and sentence are not on appeal here.

2. The presentence report had also recommended the use of the enhancement, without elaborating on the basis for applying it.

fense in a simple form." USSG § 1B1.1, comment. (n.1(f)). This does not require "planning in its most deliberate form; rather, it is sufficient if the evidence suggests merely that the crime was not committed in its simplest form." *Moore,* 225 F.3d at 642; *see also United States v. Ellerbee,* 73 F.3d 105, 108 (6th Cir.1996) (stating that the crime "just must be something more than the crime in its simplest form"). Although we have not specifically mandated how to determine the "simplest form," it is a reasonable inference that this is defined by the minimal set of acts and preparations that would still allow the commission of the crime. *See United States v. Bean,* 18 F.3d 1367, 1370 (7th Cir.1994); *see also United States v. Smith,* No. 99–1763, 2000 WL 1769634, at *1 (6th Cir. Nov. 16, 2000) (unpublished) ("the key inquiry ... lies in determining what conduct was minimally necessary in order for [a defendant] to commit the crime").

Ludlow was convicted of "burglary" under the Assimilative Crimes Act, 18 U.S.C. § 13, because burglary is a crime in Tennessee. The Tennessee burglary statute referenced in the indictment is TENN, CODE ANN. § 39–14–402(a)(3). Under this statute, the elements of the offense are (1) entry into a building, (2) without the effective consent of the property owner, and (3) commission or attempted commission of a felony, theft, or assault. Ludlow committed a "theft." A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent. TENN. CODE ANN. § 39–14–103.

■ The district court found that residential burglary required "determining

what the method of gaining access is going to be." Although this is not an element of the offense, it is not logically separable from entering a residence, since one must locate an entrance before entering, and simple, necessary, adjuncts to the elements of the offense cannot provide a sole basis for the enhancement. *Cf.* USSG § 1B1.1, comment. (n.1 (f)) (explaining that in a burglary, "checking the area to make sure no witnesses were present would not alone constitute more than minimal planning," but "obtaining building plans to plot a particular course of entry" would be more than minimal planning). The district court also found that pawning the items went beyond the basic elements of the offense. However, the government does not appear to rely on the idea that this was done in order to conceal the offense, another basis for applying the more than minimal planning enhancement, and there was no finding by the district court that the pawn arrangements had been made beforehand for easy liquidation, or even that this method of disposal was in Ludlow's mind before he entered the Lindsay home. Instead, the court found that the pawning "continued the criminal activity" of the burglary offense (which had been complete at Lindsay's residence). Planning is something that occurs prior to the commission of a crime, not afterwards, and USSG § 2B2.1(b)(1) is generally not the appropriate tool to punish a continued course of criminal conduct.

■ The district court's comments regarding how "by its nature" residential burglary "is not just simply an impulsive act," also cannot be used to justify application of the enhancement.[3] Simplicity is

---

**3.** It should be noted that, technically, Ludlow was not charged with residential burglary, which is a different offense under Tennessee law. *See* TENN. CODE ANN. § 39–14–402(a)(3) (defining burglary of a "habitation"). How-

ever, Ludlow was sentenced under the guideline for burglary from a "residence," and it is uncontested that the building he entered was indeed a residence.

relative to the offense involved, and includes those factors already taken into account in the base offense level guidelines. *See Bean*, 18 F.3d at 1370 (noting that the opposite approach would generate double counting of offense conduct). Ludlow was sentenced according to the guideline for "Burglary of a Residence," USSG § 2B2.1 (a)(1), which provides a base offense level of 17, 5 levels higher than burglary from a non-residence. USSG § 2B2.1(a)(2). Hence, to the extent that residential burglary differs in nature from burglary generally, this has already been taken into account and may not be used for further enhancement.

■ However, we may affirm the district court's decision on any ground supported in the record, even though different from the grounds relied on by the district court. *See United States v. Allen*, 106 F.3d 695, 700 n. 4 (6th Cir.1997); *see also Smith*, 2000 WL 1769634, at *4 (applying this doctrine to affirm a "more than minimal planning" enhancement). As recorded in the pre-sentence investigation (PSI) ¶ 10, "Ryals stated that he first believed William Clifton Ludlow had permission to enter the Lindsay residence." In his appeal before us, Ludlow states that "[p]aragraphs 7–11 of the PSI described the very simple facts surrounding the offense conduct," (Ludlow Br. at 5), without challenging Ryals's damaging statement. The deception of Ryals in order to gain his vehicle and assistance, which facilitated the successful commission of the offense, would clearly satisfy the requirements for "more than minimal planning."

■ Even if we were not to rely on the veracity of Ryals on this point, the record supports yet another characteristic that distinguishes Ludlow's crime from the simplest form of burglary. The government asserts that Ludlow "must have engaged in some advance planning" in order to direct his and Ryals's activities to an "unoccupied residence." (Gov't Br. at 8). This is plausible, since it appears that Ludlow was targeting the NAS generally and Lindsay's residence in particular. Ludlow was most likely familiar with the routine and layout on the NAS, having been employed during 1994 and 1996 as a food service worker and janitor at the Navy Exchange Accounting Office in Millington. The record does not indicate he had any legitimate business in the area of the NAS on the day of the offense. This previous acquaintance with the crime scene, as well as the manner of the offense (the systematic looting of a residence in a special enclave set apart from any normal travel route), suggests that Ludlow's selection of the Lindsay residence was not random, or the sort of "spontaneous, reckless caper," for which some courts have held the enhancement inappropriate. *United States v. Cropper*, 42 F.3d 755, 758–59 (2d Cir. 1994). The pre-selection of a target shows more than the minimal planning necessary to effect an entry into a residence and commit a theft.

The apparent recruitment—whether or not deceptive—of Ryals, who had access to a truck capable of transporting large items like Lindsay's 27–inch television, supports the view that Ludlow's crime was not residential burglary *simpliciter*, as does the probable targeting of Lindsay. Even if the offense was hardly the heist of the century, the record provides evidence that "a plan was formulated and implemented," which is sufficient to support the enhancement.[4] *United States v. Gerry*, 960 F.2d 599, 601 (6th Cir.1992) (internal quotations omitted). Without a definite and firm conviction that no such plan existed, we will not find clear error in the use of the enhancement.

4. This "plan," of course, must be one beyond that necessary to commit the offense.

## III

We hold the use of a two-level enhancement under USSG § 2B2.1(b)(1) not clearly erroneous, and **AFFIRM** Ludlow's sentence on different grounds.