**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ralph Gail WALKER,
Defendant–Appellant.**

No. 90–6115.

United States Court of Appeals,
Tenth Circuit.

April 22, 1991.

Duke Holden, Oklahoma City, Okl., for defendant-appellant.

Robert E. Mydans, Asst. U.S. Atty. (Timothy D. Leonard, U.S. Atty., with him on the brief), Oklahoma City, Okl., for plaintiff-appellee.

Before McKAY and MOORE, Circuit Judges, and SAFFELS, District Judge.[1]

McKAY, Circuit Judge.

The appellant, Ralph Gail Walker, appeals his conviction and sentence for multiple counts of mail fraud, odometer tampering, interstate transportation of counterfeit security, uttering and possessing forged state securities, altering motor vehicle identification numbers, and one count of conspiracy to receive, possess and dispose of stolen motor vehicles. *See* 15 U.S.C. § 1984, 18 U.S.C. §§ 371, 511, 513, 1341, 2314 (1988). Appellant argues that his conviction was a result of illegally seized evidence. He also takes exception to the district court's application of the United States Sentencing Commission Guidelines.

## I.

On February 29, 1988, Detective Dorney of the Elk City, Oklahoma Police Department and Special Agent Damron of the Federal Bureau of Investigation met appellant at his business address. The officers served him a warrant authorizing a search of his residence. After the officers conducted a search of his residential property on that same morning, appellant was arrested and charged with concealing stolen property. A later search of appellant's business uncovered evidence leading to his indictment on the charges presently before us.

Prior to trial, appellant moved the district court to suppress evidence and the fruits of any evidence obtained as a result

---

1. Honorable Dale E. Saffels, Senior United States District Judge for the District of Kansas, sitting by designation.

of an alleged illegal search at his business address on February 29, 1988. At the suppression hearing, the trial court's inquiry centered on appellant's contention that law enforcement agents conducted an illegal search of his office on the date of his arrest. Appellant's argument at the hearing focused on discrepancies in the testimony of Detective Dorney. During testimony at a hearing on state charges conducted on March 24, 1988, Detective Dorney denied that he returned to appellant's business on the day of appellant's arrest. He instead contended that he did not return to the business address until the next day. At that time, he was armed with a warrant issued by a state court authorizing him to search appellant's business. At the hearing before the district court, however, the police officer testified that he and the other arresting officer returned to appellant's business on the afternoon of appellant's arrest. He further stated that their sole purpose for returning to the business was to ensure that it was not left open to the public. He denied searching the office area at that time. Appellant's counsel asked the detective why he testified at the state proceeding that he and the other arresting officer had not gone back to appellant's business that afternoon. The officer replied that appellant's counsel at the state proceeding was attempting to confuse him.

The district court also heard the testimony of an employee of appellant's business who claimed that the officers conducted an unauthorized search of appellant's office on the afternoon of his arrest. The court then denied appellant's motion to suppress evidence. Appellant appeals here the district court's denial of his motion. He once again focuses on the discrepancy between the testimony of Detective Dorney at the suppression hearing and at the state court proceeding.

■ When reviewing the denial of a motion to suppress evidence, we accept the district court's findings of fact unless clearly erroneous. The evidence is viewed in the light most favorable to the finding of the district court. *United States v. Lopez,* 777 F.2d 543, 548 (10th Cir.1985).

■ We need not reach the court's finding that a search of the business premises did not occur on February 29, 1988, however, to sustain the district court's order. On the following day, March 1, 1988, the two arresting officers returned to appellant's place of business pursuant to a search warrant issued by a state court. At that time, they seized certain documents and other evidence that were the basis for the indictment and subsequent convictions presently before us.

■ That evidence discovered in an unlawful search must be suppressed at trial is beyond question. *See, e.g., Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). At the suppression hearing, however, appellant did not delineate what evidence, if any, was obtained in the alleged search the previous day. Nor does appellant identify any illegally obtained information contained in the affidavit to establish probable cause for the warrant authorizing a search of his business address. Therefore, even if appellant prevails in his argument that the two officers conducted an illegal search on the afternoon of his arrest, we have no evidence before us that could be suppressed.

## II.

Appellant was sentenced to twelve months for his convictions on several counts of odometer tampering and forty-one months for his convictions on multiple counts of mail fraud, interstate transportation of counterfeit security, uttering and possessing forged state securities, altering motor vehicle identification numbers, and on one count of conspiracy to receive, possess and dispose of stolen motor vehicles, all to run concurrently. Only three of the counts on which appellant was convicted, however, involved conduct that was subject to calculation under the sentencing guidelines: two counts of altering motor vehicle identification numbers and one count of conspiracy to receive, possess and dispose of a stolen motor vehicle. The district court calculated a combined offense level of twenty for those counts subject to the

sentencing guidelines. Appellant challenges here the district court's calculation of his offense level.

The district court initially determined that the two convictions for altering motor vehicle identification numbers should be grouped for purposes of calculating appellant's sentence. *See* United States Sentencing Commission, *Guidelines Manual*, § 3D1.2(b) (Nov. 1989). The district court found the base offense level for these convictions to be eight. *See* U.S.S.G. § 2B6.1(a).[2] Because the district court found that the offenses involved an organized scheme to steal vehicles or vehicle parts, however, the court increased the offense level to fourteen.[3] *See* U.S.S.G. § 2B6.1(b)(3). Additionally, the district court added four points to appellant's offense level because it found that appellant was the leader or organizer of criminal activity that involved five or more participants. *See* U.S.S.G. § 3B1.1(a). Finally, the district court added two points in its calculation of appellant's combined offense level after taking into account the additional conviction for conspiracy to receive, possess and dispose of a stolen motor vehicle. *See* U.S.S.G. § 3D1.4. When appellant's offense level of twenty was combined with a criminal history category of one, the district court determined appellant's imprisonment range to be from thirty-three to forty-one months.

### A.

Appellant initially argues that the district court erroneously applied section 2B6.1 of the sentencing guidelines to raise his base offense level from eight to fourteen. This case presents us with a sentencing guidelines issue of first impression. Construction of the guidelines is a question of law which is subject to plenary review. *See United States v. Backas,* 901 F.2d 1528 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 190, 112 L.Ed.2d 152 (1990). We must, however, accept the factual findings of the district court unless they are clearly erroneous and give due deference to the sentencing court's application of the guidelines to the facts. *United States v. Johnson,* 911 F.2d 403, 406 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 1004, 112 L.Ed.2d 1087 (1990).

At the time of appellant's sentencing on March 7, 1990, section 2B6.1 provided in relevant part:

> If the offense involved an organized scheme to steal vehicles or vehicle parts, or to receive stolen vehicles or vehicle parts, and the offense level as determined above is less than level 14, increase to level 14.

U.S.S.G. § 2B6.1(b)(3). The record reveals, however, that the district court enhanced appellant's sentence under section 2B6.1 prior to its amendment effective November 1, 1989. Under that scheme, the guidelines required enhancement to level fourteen upon demonstration of "organized criminal activity" rather than the specific demonstration that the offense involved "an organized scheme to steal vehicles or vehicle parts, or to receive stolen vehicles or ve-

---

**2.** Section 2B6.1 appears in its entirety:

*Altering or Removing Motor Vehicle Identification Numbers, or Trafficking in Motor Vehicles or Parts with Altered or Obliterated Identification Numbers*

(a) Base Offense Level: **8**

(b) Specific Offense Characteristics

  (1) If the retail value of the motor vehicles or parts involved exceeded $2,000, increase the offense level by the corresponding number of levels from the table in § 2F1.1 (Fraud and Deceit).

  (2) If the defendant was in the business of receiving and selling stolen property, increase by 2 levels.

  (3) If the offense involved an organized scheme to steal vehicles or vehicle parts, or to

receive stolen vehicles or vehicle parts, and the offense level as determined above is less than level **14**, increase to level **14**.

U.S.S.G. § 2B6.1.

**3.** The total retail value of the motor vehicles involved was between $5,000 and $10,000. Under sections 2B6.1(b)(1) and 2F1.1, the offense level would be increased two points to a total of ten. *See* U.S.S.G. §§ 2B6.1(b)(1), 2F1.1(b)(1)(C). However, section 2B6.1(b)(3) is clearly an alternative to section 2B6.1(b)(1). The district court instead applied section 2B6.1(b)(3) to increase the offense level to the higher level of fourteen.

hicle parts."[4] *See* United States Sentencing Commission, *Guidelines Manual*, App. C. 58 (Nov. 1989). Both parties have briefed the issue assuming that the amended version of the guideline applied to appellant's sentence.[5] We therefore presume for purposes of this case, without addressing the issue, that an amendment to the sentencing guidelines applies to all sentencing proceedings subsequent to its effective date.

The district court adopted the probation officer's finding that the evidence demonstrated appellant was involved in organized criminal activity. The presentencing report referred to Mr. Walker's admission that he was in receipt of three stolen vehicles and the motor from a fourth. Appellant argues here that the district court misapplied the sentencing guidelines.

We begin our analysis with the offenses for which appellant was convicted. Count twenty-one of the indictment charges appellant with knowingly removing or causing to be removed a motor vehicle identification number from a wrecked 1983 Pontiac Grand–Prix. Count twenty-three charges appellant with knowingly removing and tampering with or causing the removal or tampering with a vehicle identification plate from a 1981 Pontiac and substituting it with the identification plate of a 1983 Pontiac. Neither of these vehicles, however, were the stolen vehicles to which the probation officer's report referred.

■ We look to the commentary of the guidelines to aid us in our review of the district court's application of section 2B6.1. There, the Commission stated:

Subsection (b)(3), referring to an "organized scheme to steal vehicles or vehicle parts, or to receive stolen vehicles or

vehicle parts," provides an alternative minimum measure of loss in the case of an ongoing, sophisticated operation such as an auto theft ring or "chop shop."

U.S.S.G. § 2B6.1, comment. (n.1). It is clear from the comments that the revised guideline does not apply to all "organized criminal activity." Rather, it establishes a minimum offense level for ongoing activity involving the theft or receipt of stolen vehicles when the value of the stolen property involved in the offense does not reach a certain amount.[6]

The probation officer's presentencing report indicated appellant was involved with stolen motor vehicles. The provision under which appellant was sentenced, however, requires that the offense—altering motor vehicle identification numbers—involve an organized scheme to steal or receive stolen motor vehicles or vehicle parts. Resort to section 2B6.1(b)(2) furthers such an interpretation of section 2B6.1(b)(3). That subsection provides a two-point increase in the offense level "if the defendant was in the business of receiving and selling stolen property." U.S.S.G. § 2B6.1(b)(2). Unlike subsection (b)(3), subsection (b)(2) does not require that the offense be involved in the overall scheme. If the commission had intended (b)(3) to have such general application, it would have used the same broad language, referring to "the defendant" rather than "the offense."

■ We therefore look to the record to determine whether the district court was presented with sufficient evidence to demonstrate that the alteration or removal of motor vehicle identification numbers by appellant was in furtherance of a scheme to receive stolen vehicles or vehicle parts.

---

**4.** The November 1, 1989, amendment also renumbered subsection (b)(2) as (b)(3) and inserted the following new subsection (b)(2):

If the defendant was in the business of receiving and selling stolen property, increase by 2 levels.

U.S.S.G. § 2B6.1(b)(2).

**5.** Though the sentencing commission characterizes the amendment as a clarification of the coverage of a specific offense characteristic, at

least one court has found that a similar amendment to section 2B1.2(b)(5) represented a fundamental change in the application of that section. *See United States v. Russell,* 913 F.2d 1288, 1292 (8th Cir.1990), *petition for cert. filed,* No. 90–6989 (Jan. 31, 1991).

**6.** Otherwise, the offense level may be increased beyond fourteen by using the applicable table included in section 2F1.1(b)(1). *See* U.S.S.G. §§ 2B6.1(b)(1), 2F1.1(b)(1).

The government's justification for the application of section 2B6.1(b)(3) demonstrates the section's inapplicability to the circumstances before us. The government posits that appellant removed vehicle identification number plates from vehicles and placed them on other vehicles to give the impression that the vehicle was a later model. Indeed, evidence at trial demonstrated that appellant used the body of a wrecked 1981 Pontiac and the drive train of a wrecked 1983 Pontiac to make one operable vehicle. The government did not argue that either vehicle was stolen. Appellant then took the vehicle identification number from the 1983 vehicle from which he obtained the drive train and affixed it to the body of the 1981 vehicle. This practice, in combination with the alteration of odometer readings to reflect that the automobile had been driven fewer miles, furthered appellant's scheme of passing off vehicles to unsuspecting buyers at an inflated price.

Because appellant's removal of the vehicle identification numbers did not further or conceal the receipt or sale of stolen motor vehicles or stolen motor vehicle parts, we conclude that the trial court improperly applied section 2B6.1(b)(3) to advance appellant's offense level from eight to fourteen.

### B.

■ Appellant next complains that the trial court inappropriately applied section 3B1.1 of the guidelines to increase his offense level by four. That provision provides in relevant part: "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels." U.S.S.G. § 3B1.1(a). Appellant argues that there was no evidence demonstrating that there were five or more people involved in the offense.

Under the sentencing guidelines, a participant "is a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, comment. (n.1). The trial court found five participants were involved here: Terry Walker, Charles Porter, appellant, appellant's wife, and appellant's daughter. We have previously concluded that the defendant is included among the participants for the purpose of calculating section 3B1.1. *United States v. Reid*, 911 F.2d 1456, 1464 (10th Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 990, 112 L.Ed.2d 1074 (1991). Appellant admits that Mr. Walker and Mr. Porter were criminal participants for purposes of calculating section 3B1.1(a). The only issue, therefore, is whether appellant's wife and daughter should be included in the calculation.

Upon reviewing the record, we do not find the trial court's findings of fact to be clearly erroneous. The preponderance of the evidence, cited in the presentencing report, demonstrates that both appellant's wife and daughter were accomplices in his criminal activity. Without any evidence to the contrary provided by appellant, we must assume those facts to be correct. *See Johnson*, 911 F.2d at 405.

### III.

For the foregoing reasons, appellant's conviction is AFFIRMED. We VACATE appellant's sentence and REMAND the cause to the district court for resentencing consistent with this opinion.