977 F.2d 583
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alexander NEWELL (91-1332), Lawrence Newell (91-1692),
Defendants-Appellants.
 Nos. 91-1322, 91-1692.
 United States Court of Appeals, Sixth Circuit.
 Oct. 5, 1992.
 
 Before MERRITT, Chief Circuit Judge, ALAN E. NORRIS, Circuit Judge, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Brothers Alexander and Lawrence Newell appeal the sentences imposed by the district court for crimes related to drug trafficking. Both men entered into Rule 11 plea agreements with the government in which they admitted they had participated in a conspiracy to possess cocaine with the intent to distribute it in violation of 21 U.S.C. § 846. At issue in both appeals is the district court's application of the Sentencing Guidelines with regard to the amount of cocaine involved in the conspiracy. Alexander Newell also argues that the district court erred in refusing him permission to withdraw his guilty plea. For his part, Lawrence Newell disputes the four-level enhancement that he received as the result of his role in the offense, as well as the constitutionality of the sentencing proceedings. Finding no merit in these contentions, we affirm the sentences of both men.
 
 I.
 
 2
 On June 21, 1990, a federal grand jury returned a sixteen-count indictment against ten individuals, including defendants. The first count of the indictment outlines the contours of an illicit conspiracy to distribute a substantial amount of cocaine in the Detroit area. The Newells pleaded guilty to this count in exchange for the government's promise to dismiss the remaining counts pending against them.
 
 
 3
 However, the plea agreements failed to resolve an issue crucial to sentencing: the quantity of drugs involved in the conspiracy and thus attributable to its participants. As a result, the district court agreed to conduct an evidentiary hearing to resolve this and other factual questions related to the sentences of both defendants. This hearing, which included the testimony of a half-dozen witnesses, occurred in February 1991.
 
 
 4
 Based on this proceeding, the district court found that the conspiracy to which the Newells pleaded guilty involved in excess of fifty kilograms of cocaine. The judge also determined that Lawrence Newell qualified for a four-point enhancement to his base offense level because he acted as a leader of a group of five or more individuals who participated in a criminal enterprise. Accordingly, Lawrence and Alexander Newell received sentences of 235 and 168 months' imprisonment, respectively.
 
 II.
 A. Constitutionality of Sentencing
 
 5
 Lawrence Newell contends that the sentencing proceeding held by the district court violated the Confrontation Clause of the Sixth Amendment because the trial judge relied in part on hearsay testimony to arrive at factual findings relevant to sentencing. In framing this argument, defendant maintains that the Confrontation Clause is designed to protect against the inherent unreliability of such hearsay evidence.
 
 
 6
 Subsequent to oral argument in this appeal, this court held in another case that the Confrontation Clause does not apply to sentencing proceedings: "The long-established principle ... is that the constitutional protections afforded defendants at a criminal trial, including confrontation rights, are not available at sentencing proceedings to limit the court's consideration of the background, character and conduct of the defendant." United States v. Silverman, Nos. 90-3205/5733/5816; 91-6506, slip op. at 19 (6th Cir. Sept. 22, 1992) (en banc), 1992 WL 230614, 1992 U.S.App. LEXIS 22892. Moreover, the primary case Lawrence Newell offers in support of his Confrontation Clause claim, United States v. Fortier, 911 F.2d 100 (8th Cir.1990), is expressly rejected by Silverman. Id. at 25, 26.
 
 
 7
 With regard to the reliability of hearsay evidence, we note that information to be considered by the trial court for sentencing purposes need not come with an ironclad guarantee of accuracy. Rather, this court requires that the evidence show some indicia of reliability in order to satisfy due process. United States v. Herrera, 928 F.2d 769, 773 (6th Cir.1991) (citing United States v. Smith, 887 F.2d 104, 108 (6th Cir.1989)); United States v. Robinson, 898 F.2d 1111, 1115 (6th Cir.1990) ("The district court may consider hearsay evidence in determining sentence, but the accused must be given an opportunity to refute it, and the evidence must bear some minimal indicia of reliability in respect of defendant's right to due process.").
 
 
 8
 In the case before us, Lawrence Newell had ample opportunity to challenge the hearsay testimony offered during the sentencing proceeding. The witnesses who offered the hearsay testimony were all subject to cross-examination by counsel. Moreover, the record indicates that the trial judge was sensitive to the inherent dangers of hearsay evidence, but nevertheless found the witnesses to be "substantially credible."
 
 
 9
 In assessing a sentence calculation, this court must accept the findings of fact of the district court unless they are clearly erroneous. 18 U.S.C. § 3742(e). Upon review, we conclude that no error occurred in the conduct of the sentencing proceedings.
 
 B. Role in the Offense
 
 10
 Lawrence Newell next challenges the four-level increase assessed against him by the district court for his role in the offense. Section 3B1.1 of the Sentencing Guidelines allows the court to impose such an upward adjustment "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." United States Sentencing Commission, Guidelines Manual, § 3B1.1 (Nov.1990).
 
 
 11
 Once again, we note that this court is required by statute to "accept the findings of fact of the district court unless they are clearly erroneous and [accord] due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e). For its part, the government need only prove by a preponderance of the evidence those facts the court should use in determining defendant's sentence. United States v. Chambers, 944 F.2d 1253, 1271 (6th Cir.1991), cert. denied, 112 S.Ct. 1217 (1992).
 
 
 12
 Newell maintains that the district court only found that he was involved with four individuals, not the five required by § 3B1.1. This argument overlooks the fact that Lawrence Newell himself was a member of the criminal enterprise, bringing the total to five. In determining the extent of a criminal enterprise for purposes of a § 3B1.1 offense level enhancement, the district court may include the defendant in its calculation. United States v. Walker, 931 F.2d 631, 636 (10th Cir.1991); United States v. Preakos, 907 F.2d 7, 10 (1st Cir.1990); see also United States v. Feinman, 930 F.2d 495, 500 (6th Cir.1991).
 
 
 13
 Accordingly, the trial court properly imposed a four-step enhancement to Lawrence Newell's offense level for his leadership role in the criminal enterprise.
 
 C. Challenge to Guilty Plea
 
 14
 Alexander Newell raises a two-prong challenge to his guilty plea. First, he alleges that he entered into the plea agreement without understanding its possible repercussions. Accordingly, he contends that it must be set aside as involuntary. In the alternative, Newell seeks to withdraw his plea on the ground that it was not supported by an adequate factual basis. We address each of these arguments in turn.
 
 
 15
 A guilty plea, particularly one likely to result in imprisonment, must be made voluntarily. To that end, the trial court should employ the "utmost solicitude ... in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." Boykin v. Alabama, 395 U.S. 238, 243-44 (1969). However, understanding the "consequence" of a plea does not require the court to inform the defendant of the actual sentence he will receive. United States v. Thomas, 894 F.2d 996, 997 (8th Cir.), cert. denied, 495 U.S. 909 (1990).
 
 
 16
 In the case before us, Alexander Newell entered into a plea agreement knowing that certain matters, most importantly the amount of drugs involved in the conspiracy, would be resolved at a subsequent proceeding. The district court took pains to make this clear to defendant:
 
 
 17
 THE COURT: It will be, in a sense, a mini-trial. Certain facts which are in dispute will be resolved at the time of sentence, after the Pre-Sentence Report has been prepared and counsel have had an opportunity to consider it.
 
 
 18
 Because of the dates of the offense, this is a sentencing guidelines case and some of the quantities of drugs, perhaps, and other matters will affect the guideline range.
 
 
 19
 Counsel have reserved to themselves an opportunity to present proofs in those matters and have asked this judge to act as a factfinder at the time of sentence to resolve the matters in dispute.
 
 
 20
 Do you find that acceptable?
 
 
 21
 THE DEFENDANT: Yes I do.
 
 
 22
 The court also found that "this defendant is alert and intelligent. He well understands, now, the consequences of offering a guilty plea." Finally, the trial judge ascertained that Alexander Newell had not been promised anything beyond the specifics of the plea agreement, nor had he been forced to enter a guilty plea.
 
 
 23
 On appeal, defendant argues that he "did not know that [his plea] was an admission of his involvement with the total amount of cocaine involved in the conspiracy," but instead "thought his sentencing would be based on the amount of cocaine he dealt with." In support of this contention, Alexander Newell points to the following colloquy between his counsel and the district court:
 
 
 24
 [COUNSEL]: Your honor, it's my understanding, also, that the court will conduct a mini-trial as to what guidelines should be imposed, where the guidelines should fall.
 
 
 25
 And my client pleads guilty to Count One. And he's not pleading guilty to distributing five or more kilos, Your Honor.
 
 
 26
 He's pleading guilty to having conspired with those names [sic] in the Indictment.
 
 
 27
 And that the court will determine what guidelines should be used based on the mini-trial that we will conduct at some point in the future.
 
 
 28
 ....
 
 
 29
 THE COURT: The quantity's in dispute. And there are some other matters in dispute, factual determinations, which you are saying will be made by the court in a bench trial.
 
 
 30
 [COUNSEL]: That is correct, Your Honor.
 
 
 31
 While this conversation makes clear that Alexander Newell did not choose to admit to distribution of more than five kilograms of cocaine, he did plead guilty to involvement in a conspiracy to distribute. Further, he agreed to allow the trial court to serve as factfinder with regard to the amount of drugs at issue. As the record indicates, defendant knowingly and intelligently entered into a plea agreement, reserving some determinations for the trial court. That these determinations resulted in a sentence higher than the one for which he hoped does not render his decision to plead guilty any less voluntary. United States v. Stephens, 906 F.2d 251, 254 (6th Cir.1990).
 
 
 32
 We turn next to the sufficiency of the district court's inquiry into the factual basis of the plea. Fed.R.Crim.P. 11(f) instructs the court not to accept a guilty plea "without making such inquiry as shall satisfy it that there is a factual basis for the plea." See United States v. Goldberg, 862 F.2d 101, 106 (6th Cir.1988) (Rule 11 designed to ensure that defendant enters plea of guilty with full understanding of nature of crime charged and that there is a factual basis for the plea). To be found guilty of conspiracy, a defendant must have been aware of the object of the criminal enterprise and have voluntarily associated himself with it. This association, however, need only be slight. United States v. Hodges, 935 F.2d 766, 773 (6th Cir.), cert. denied, 112 S.Ct. 251 (1991).
 
 
 33
 The record reveals that defendant acknowledged that he conspired with the other individuals charged in the indictment to distribute cocaine in the Detroit area during 1988 and 1989. He also indicated that he understood the meaning of the charge of conspiracy. Although this information was presented with a minimum of elaboration during the change of plea hearing, it is adequate to establish a factual basis for a criminal conviction pursuant to 21 U.S.C. § 846. See United States v. Van Buren, 804 F.2d 888, 892 (6th Cir.1986) (extent to which factual basis must be developed depends on complexity of the crime). Furthermore, testimony produced during the subsequent "mini-trial" firmly establishes that Alexander Newell took part in the alleged conspiracy.
 
 
 34
 For these reasons, we conclude that the district court afforded defendant all of the requisite constitutional and procedural protections in accepting his plea.
 
 D. Quantity of Cocaine
 
 35
 Finally, both defendants challenge the district court's determination that the conspiracy to which they pleaded guilty involved more than fifty kilograms of cocaine. Under the Sentencing Guidelines, this finding is of critical importance because it directly affects the calculation of the base offense level. See U.S.S.G. § 2D1.1.
 
 
 36
 During the sentencing hearing, the trial judge resolved this issue in the following terms:
 
 
 37
 [T]his court must find that there were substantial quantities, more than 50 kilos involved in this ongoing effort over a long period of time, involving a substantial number of persons.... I find on this record that there is, clearly, a preponderance of the evidence to support the estimate [of drug quantity] that I have just made.
 
 
 38
 We begin by noting that "[a] district court's finding as to the amount of drugs a defendant is to be held accountable for is a factual finding which must be accepted by this court unless clearly erroneous." United States v. Paulino, 935 F.2d 739, 756 (6th Cir.1991) (citing United States v. Walton, 908 F.2d 1289, 1300-01 (6th Cir.), cert. denied, 111 S.Ct. 532 (1990)), cert. denied, 112 S.Ct. 883 (1992). After conducting an extensive evidentiary hearing, the district court based its conclusion that the conspiracy involved more than fifty kilograms of cocaine on the testimony of those witnesses it found credible. We find ample evidence in the record to support this conclusion.
 
 
 39
 The primary thrust of Lawrence Newell's argument focuses on the unreliability of the individuals who testified against him during the sentencing proceeding. However, the district court is in a much better position than this court to judge the credibility of witnesses. United States v. Perez, 871 F.2d 45, 47 (6th Cir.) (citing 18 U.S.C. § 3742(e)) (clearly erroneous standard of review applies to district court's assessment of credibility), cert. denied, 492 U.S. 910 (1989).
 
 
 40
 Because no cocaine was actually seized from Lawrence Newell, the trial court correctly took upon itself the duty of estimating the quantity of drugs for which each defendant was responsible. See United States v. Walton, 908 F.2d at 1301; U.S.S.G. § 2D1.4, comment. (n. 2). One witness, Nelson Aviles, testified that he picked up $629,000 from the home of Lawrence Newell, which he was told represented payment for fifty kilograms of cocaine. Law enforcement agents discovered $121,000 at Newell's home when they executed a search warrant eleven days later.
 
 
 41
 Furthermore, the trial court heard testimony during the sentencing proceedings from United States Customs Service Agent Timothy Bethel that the street price for a kilogram of cocaine was approximately $15,000 at the time these events unfolded. An application note for the section of the Sentencing Guidelines that governs attempts and conspiracies provides that "[w]here there is no drug seizure ... the sentencing judge may consider ... the price generally obtained for the controlled substance [in determining the quantity of the controlled substance]." U.S.S.G. § 2D1.4, comment. (n. 2). Thus, the district court could reasonably find from this testimony alone that Lawrence Newell was aware that fifty kilograms of cocaine were involved in the conspiracy.[1]
 
 
 42
 The amount of drugs attributable to Alexander Newell presents a somewhat closer question because the district court found that he "was not the key figure" in the conspiracy. Nonetheless, "[i]n the case of criminal activity undertaken in concert with others ... the conduct for which the defendant 'would be otherwise accountable' also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." U.S.S.G. § 1B1.3, comment. (n. 1); see United States v. Sailes, 872 F.2d 735 (6th Cir.1989) (court could consider cocaine placed in defendant's residence without her knowledge because it was in furtherance of jointly undertaken criminal activity reasonably foreseeable by defendant).
 
 
 43
 Alexander Newell's guilty plea specifically acknowledges participation in a broad conspiracy with his brother Lawrence and others. Moreover, witness Derrick Johnson testified that Alexander supplied him with between two and three kilograms of cocaine per week from January to August 1989. This conduct alone would account for more than fifty kilograms.
 
 
 44
 But, in addition to Johnson's testimony regarding Alexander's drug trafficking, a preponderance of the other evidence received during the sentencing proceeding demonstrated that he played a role in Lawrence's operation. The brothers, for instance, discussed Johnson's status as a runner and used him to carry cocaine between them. In addition, Alexander accompanied his brother to Little Rock when a problem arose relating to a significant drug delivery. The government also introduced transcripts of telephone calls that indicated the two were coordinating their drug trafficking activity to some degree. In short, there is sufficient evidence in the record to support a finding that Alexander could reasonably foresee that the conspiracy to which he pleaded guilty involved significant quantities of cocaine. When coupled with the amounts of cocaine he supplied to Johnson, it is clear that the district court did not err in determining that Alexander Newell should be held accountable for fifty kilograms of the drug.
 
 
 45
 Finally, defendants contend that the trial judge did not explain with sufficient specificity his basis for arriving at the drug quantity. See United States v. Morrison, 946 F.2d 484 (7th Cir.1991) (remanding for more specific findings regarding calculation of quantity). Because of the importance of the drug quantity to a defendant's sentence, district courts should develop a record of sufficient detail to permit appellate review. In the present case, however, the record is adequate to assure us that the fifty kilogram figure is supported by a preponderance of the evidence.
 
 III.
 
 46
 The convictions and sentences of defendants are affirmed.
 
 
 47
 MERRITT, Chief Judge, dissenting.
 
 
 48
 For the reasons given in my dissents in United States v. Davern, No. 90-3681 (6th Cir. filed July 21, 1992), and United States v. Silverman, No. 90-3205, (6th Cir. filed September 22, 1992), I regard the enhanced portion of the sentences imposed against the two Newell brothers in this drug case to be grossly excessive and in violation of the Sentencing Reform Act and the Confrontation and Due Process Clauses. One brother received 20 years and the other 14 years of real time incarceration. Most of that arises from the enhanced portion of the sentences over and above the sentence that would be imposed for the base offense level of the one count to which they pled guilty. I would reverse the sentences and remand for resentencing. For the reasons previously given in my dissents in Davern and Silverman, the sentences should be limited to the base offense level of the one drug offense for which they pled guilty without enhancement for relevant conduct and role in the offense.
 
 
 
 [1]
 In addition to the testimony of Aviles and Bethel, other witnesses linked Lawrence Newell directly to transactions involving large quantities of cocaine. As a result, we do not hesitate to conclude that the fifty kilogram figure represents a conservative estimate of the amount of cocaine for which Lawrence Newell should be held responsible