107 F.3d 874
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Erin B. HARRIS, Defendant-Appellant.
 No. 96-3007.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 28, 1997.
Decided Feb. 14, 1997.
 
 Before BAUER, KANNE and EVANS, Circuit Judges.
 
 ORDER
 
 1
 Erin Harris pleaded guilty to one count of trafficking in an automobile with an altered identification number. 18 U.S.C. § 2321. Harris appeals the enhancement of his offense level under § 2B6.1(b)(3) of the sentencing guidelines for participation in an organized scheme to steal vehicles. Because the district court properly determined Harris's offense level, we affirm Harris's sentence.
 
 
 2
 The FBI arrested Harris following an investigation into a large-scale auto theft and burglary ring in Indiana. Although the full extent of Harris's participation in the scheme is not clear from the record, it is clear that on one occasion Harris helped another member of the ring, Russell Petty, sell a stolen 1991 Chevrolet Blazer. Moreover, on a second occasion, Harris helped four other members of the ring steal a Cadillac; after the five men disassembled the Cadillac Harris stored various parts of the car at his home, from which members of the ring sold the parts.
 
 
 3
 Harris's conviction in this case stems from the sale of the stolen Blazer. In June 1991 Petty stole the Blazer from a Crawfordsville, Indiana, automobile dealership. Petty changed the vehicle identification number (VIN) on the Blazer to that of a 1987 Blazer and then transferred the title of the retagged vehicle to Harris. In December 1991 Petty offered to sell the Blazer to William Wagoner--an undercover FBI agent.
 
 
 4
 At an initial meeting between Petty, Wagoner, and Harris, Wagoner inspected the Blazer and agreed to buy it. Wagoner and Harris then agreed to meet at a shopping mall several days later, at which time Harris gave Wagoner the keys to the Blazer in exchange for $1,000. Harris then reported the Blazer stolen and collected an $8,000 insurance claim on it.
 
 
 5
 Harris ultimately was arrested along with 23 other individuals associated with the auto theft and burglary ring. He was charged with trafficking in an automobile with an altered identification number, 18 U.S.C. § 2321, and mail fraud, 18 U.S.C. § 1341, for his part in the sale of the stolen Blazer and his fraudulent insurance claim. Harris pleaded guilty to the trafficking count in exchange for the dismissal of the mail fraud charge.
 
 
 6
 At his sentencing hearing everyone agreed that Harris had a criminal history category of III and that § 2B6.1(a) of the sentencing guidelines established Harris's base offense level at 8; the sole issue was the appropriate enhancement under subsection (b) of § 2B6.1.[1] The Probation Office believed that under § 2B6.1(b)(1) Harris's offense level should be increased 4 levels--to 12--because the total value of the stolen Cadillac, the stolen Blazer, and Harris's bogus insurance claim for the Blazer was between $20,000 and $40,000.[2] With a 2-level reduction for acceptance of responsibility, Harris's presentence investigation report (PSR) recommended a total offense level of 10.
 
 
 7
 The prosecution objected to the PSR, however. The prosecution believed that § 2B6.1(b)(3), rather than § 2B6.1(b)(1), controlled the enhancement of Harris's sentence. Subsection (b)(3) establishes a minimum offense level of 14, regardless of the dollar value of the defendant's relevant conduct, "[i]f the offense involved an organized scheme to steal vehicles or vehicle parts...." U.S.S.G. § 2B6.1(b)(3).
 
 
 8
 In support of its position, the prosecution sought to introduce the affidavit of Special Agent Wagoner, which detailed the activities of the theft ring and listed 65 separate thefts and sales of stolen goods. The defense objected to the admission of Wagoner's affidavit on relevance grounds, arguing that the majority of the incidents and facts included in the affidavit did not involve Harris.
 
 
 9
 In response to the defense's objection, the prosecution explained that it sought the admission of Wagoner's affidavit only with respect to two incidents--the theft and sale of the Blazer and a second incident involving the theft and sale of an Astro van. In this second incident, Petty stole two Astro vans from an automobile dealership and then transferred title to one of the vans to Neil Kegerreis.[3] Petty subsequently sold this van to an FBI informant, and Kegerreis reported the van stolen and collected an insurance claim on it. There is no indication in the record that Harris had anything to do with--or was even aware of--the theft or sale of the Astro vans.
 
 
 10
 The district court ultimately admitted only those parts of Wagoner's affidavit that dealt with the thefts and sales of the Blazer and the Astro vans. Based on this evidence, the prosecution argued that § 2B6.1(b)(3) controlled Harris's case. The prosecution contended that
 
 
 11
 at least in these two occasions ... individuals received stolen vehicles [from Russell Petty], ... and in the case of both Kegerreis and also Defendant Harris these vehicles were transferred to those individuals, who used them for a time and then subsequently gave them up in an insurance fraud kind of situation where they falsely reported that they had been stolen when actually they were selling these stolen vehicles to yet other individuals.
 
 
 12
 Based on the similarity between the theft and sale of the Blazer and the theft and sale of the Astro van, the prosecution contended that Harris's offense "involved an organized scheme to steal vehicles." Accordingly, the prosecution argued that Harris should be sentenced under § 2B6.1(b)(3).
 
 
 13
 The district court ruled in favor of the prosecution, noting that
 
 
 14
 the focus [in § 2B6.1(b)(3) ] is on the offense and ... whether it involved an organized scheme to steal vehicles.... And the evidence, limited as it is by the Court's ruling, still does reflect an organized scheme to steal vehicles ... revolving in the instance of these two matters, subject to the Government's offer, revolving around Russell Petty, the Kegerreis matter, and this matter....
 
 
 15
 The court therefore established Harris's adjusted offense level at 14. With a 2-level reduction for acceptance of responsibility and a criminal history category of III, Harris faced a range of 15 to 21 months imprisonment. The court sentenced Harris to 16 months imprisonment, and this appeal followed.
 
 
 16
 Harris offers two reasons why the district court erred by applying subsection (b)(3) to him. Harris argues that a district court may enhance a sentence under § 2B6.1(b)(3) only when the value of the loss is difficult to ascertain. In cases--such as his--where the court can ascertain value of the loss with certainty, Harris contends that the court must apply subsection (b)(1) rather than (b)(3).
 
 
 17
 This argument is meritless. Section 2B6.1(b)(3) states, "[i]f the offense involved an organized scheme to steal vehicles ..., and the offense level as determined above [in § 2B6.1(b)(1) ] is less than level 14, increase to level 14." The focus of subsection (b)(3) is clearly on the organized scheme and on establishing a minimum offense level for being part of such an organized scheme, regardless of the value of the loss. Moreover, the reference in subsection (b)(3) to cases in which "the offense level as determined [in § 2B6.1(b)(1) ] is less than level 14" clearly anticipates cases in which the value of the loss can be determined with certainty for the purpose of subsection (b)(1); even in such cases, subsection (b)(3) directs the district court to increase the defendant's offense level to 14. Thus, we reject Harris's argument.
 
 
 18
 Harris's other argument is somewhat stronger, though he ultimately loses on the facts of this case. Harris contends that in order to be sentenced under subsection (b)(3), there must be some evidence that he knew he was a part of an "organized scheme," as opposed to being merely an unwitting pawn in a larger game. That is, Harris contends that there is a scienter requirement with respect to his participation in the "organized scheme," and that the prosecution put forth no evidence on this point. The government, in contrast, contends that in order to enhance Harris's offense level under subsection (b)(3), it need only prove that Harris's offense "furthered" an organized scheme to steal vehicles. Thus, in both the district court and here, the government relied solely on evidence relating to Kegerreis's disposal of the stolen Astro van to prove that an organized scheme existed, without pointing to any evidence that Harris was aware of the existence of the organized scheme or his role in it.[4]
 
 
 19
 We need not reach this question of whether subsection (b)(3) includes a knowledge or scienter element, however. Harris's PSR included as relevant conduct both the stolen Blazer and the stolen Cadillac. After Harris, Petty, and several others stole the Cadillac, they dismantled it and stored various pieces of it in Harris's home. Mark Petty (Russell's brother) sold pieces of the Cadillac to Agent Wagoner directly from Harris's home. Thus, Harris's claim that he was "simply one of [Russell Petty's] many customers taking advantage of a deal too good to be true" has no merit. Regardless of whether subsection (b)(3) contains a scienter requirement, Harris's involvement in the theft, dismantling, storage, and sale of the Cadillac provide sufficient support for the district court's conclusion that Harris was aware that he was a part of an "organized scheme" including numerous other participants that went well-beyond Russell Petty's mere theft and sale of the Blazer.
 
 
 20
 Accordingly, we hold that the district court correctly sentenced Harris, and the judgment below is AFFIRMED.
 
 
 
 [1]
 Harris was sentenced under the 1995 version of the sentencing guidelines. All references in this order are to that version
 
 
 [2]
 The stolen Cadillac was worth $9,700.00, the stolen Blazer was worth $19,830.00, and Harris collected $8,025.10 from his insurance claim, for a total of $37,555.10. Section 2B6.1(b)(1) cross-references the table in § 2F1.1; under § 2F1.1(b)(1)(E), offenses involving more than $20,000 but less than $40,000 are increased 4 levels
 
 
 [3]
 The record contains no explanation of what became of the other Astro van
 
 
 [4]
 The government cites United States v. Walker, 931 F.2d 631 (10th Cir.1991), in support of its argument. Walker is inapposite, however. The defendant there was convicted of two counts of altering vehicle identification numbers and one count of conspiracy to receive, possess, and dispose of a stolen motor vehicle. Id. at 633. The vehicles with the altered VIN's were not stolen, however. Id. at 635. Nonetheless, the district court enhanced the defendant's sentence on the two altered VIN counts under § 2B6.1(b)(3). The Tenth Circuit reversed this enhancement because the cars with the altered VIN's were not stolen, and hence, "[the defendant's] removal of the vehicle identification numbers did not further or conceal the receipt or sale of stolen motor vehicles...." Id. at 635-36. Nothing in Walker addresses Harris's argument in this appeal--that the prosecution must present some evidence proving that the defendant knew that his offense was part of an organized scheme
 We have found only one other published case, United States v. Uder, 98 F.3d 1039 (8th Cir.1996), that discusses § 2B6.1(b)(3), and there is no discussion there of any scienter requirement in that section of the Sentencing Guidelines.