**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Michael J. PANDO, Defendant– Appellant.**

No. 02–2285.

United States Court of Appeals, Sixth Circuit.

June 23, 2004.

Daniel L. Lemisch, U.S. Attorney's Office, Detroit, MI, for Plaintiff–Appellee.

ichard M. Helfrick, Federal Public Defenders Office, Detroit, MI, for Defendant–Appellant.

Before BOGGS, Chief Circuit Judge; KENNEDY, Circuit Judge; and RUSSELL, District Judge.[1]

KENNEDY, Circuit Judge.

Without a plea agreement, defendant Michael J. Pando ("defendant") pleaded guilty to one count of aiding and abetting the interstate transportation of stolen property in violation of 18 U.S.C. § 2314 and 18 U.S.C. § 2. The district court sentenced defendant to twenty-two months of imprisonment followed by two years of supervised release. Pando appeals only the district court's assessment of a two-point enhancement under then-existing United States Sentencing Guidelines ("U.S.S.G.") § 2B1.1(b)(4)(A) for a crime involving more than minimal planning.[2] For the following reasons, we AFFIRM defendant's sentence.

## I. Background

On October 17, 2000, officers with the Taylor, Michigan, police department observed defendant and his co-defendant, William McMullen ("McMullen"), enter a pick-up truck, leave a motel in Dearborn, Michigan, and arrive at a house in Detroit, Michigan.[3] Defendant and McMullen entered the house after parking the truck in an alley behind the house. Shortly after defendant and McMullen left the residence, the officers stopped the pick-up

---

1. The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

2. Sentencing calculations relied upon the 2000 edition of the United States Sentencing Guidelines Manual.

3. Another male was present, but drove to the house separately.

truck, in which defendant was a passenger and McMullen was the driver, for a traffic violation. Pursuant to a consent search of that vehicle, the officers located, in a large utility box in the bed of the truck, a backpack containing a loaded 9mm Ruger semi-automatic handgun and ammunition as well as a suitcase containing $696,283.00 in stolen jewelry and $25,284.00 in cash. The jewelry, along with other jewelry valued at $1,955,731.00, had been stolen from a Service Merchandise store in Ocala, Florida, on May 4, 2000. The jewelry recovered from the truck was individually packaged in plasticine envelopes with a handwritten notation indicating their contents and the value of those contents. The vehicle contained a handwritten list both describing and pricing each of the stolen jewelry items found in the vehicle; the handwriting on the list was similar to defendant's, and the list contained McMullen's fingerprint. It is unknown whether defendant or Service Merchandise had packaged the jewelry individually in the envelopes.

McMullen admitted that he had loaded the pick-up truck with the stolen merchandise with the intent of driving to Detroit to attempt to sell it there. McMullen conceded that he had placed the jewelry in the "unusual" location of a toolbox in the back of the pick-up truck. Defendant admitted that he had handled the stolen merchandise, that he had helped drive the truck to Michigan, and that he expected to benefit from a percentage of the proceeds from the sale of the merchandise.

Defendant and McMullen were former employees of Service Merchandise stores in Florida. Indeed, McMullen had been a jewelry manager at the Leesburg, Florida, Service Merchandise store, which had been burglarized on October 4, 1998, in a manner similar to the burglary of the Ocala store. Defendant had a significant history of pawning jewelry and other items in Florida. Defendant had pawned jewelry that matched jewelry stolen from the Leesburg Service Merchandise store.

The district court assessed defendant the two-level enhancement under U.S.S.G. § 2B1.1(b)(4)(A) based upon the following: 1) there was no explanation for why defendant chose to transport the stolen jewelry to Michigan and sell it there, rather than one of the closer metropolitan areas; 2) even if Service Merchandise had individually packaged the jewelry, it had not composed the list, which catalogued only that jewelry present in the truck and not all of the jewelry stolen from the Ocala store; 3) the list cataloguing and pricing the stolen jewelry bore handwriting similar to defendant's; 4) the trip was "far more than a quick trip across ... state lines to fence the items in an adjoining jurisdiction" because the trip spanned two days traveling to Michigan and a portion of another day in Michigan, and defendant, once in Michigan, was actively involved in an apparent effort to sell the jewelry; and 5) the length of the trip required defendant to take time away from his regular activities. The district court concluded that defendant's commission of the offense of interstate transportation of stolen property was more than a simple, opportunistic event, but involved more effort and more planning than is typical for its commission in its simplest form.

## II. Analysis

We review a district court's interpretation of a sentencing guideline *de novo*, *United States v. Adu*, 82 F.3d 119, 124 (6th Cir.1996), and its factual determinations underlying an application of a sentencing guideline for clear error. *United States v. Jackson–Randolph*, 282 F.3d 369, 390 (6th Cir.2002). We review for clear error a district court's application of a sentence enhancement for a crime involving "more

than minimal planning" under § 2B1.1(b)(4)(A). *United States v. Moore*, 225 F.3d 637, 642 (6th Cir.2000). A factual finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *United States v. Ables*, 167 F.3d 1021, 1035 (6th Cir.1999).

U.S.S.G. § 2B1.1(b)(4)(A) provides for a two-level sentence enhancement "[i]f the offense involved more than minimal planning."[4] Pursuant to U.S.S.G. § 1B1.1, comment. (n.1 (f)), "more than minimal planning" signifies: 1) planning that is "more than is typical for commission of the offense in a simple form"; 2) conduct involving "significant affirmative steps ... to conceal the offense, other than conduct" that comprises obstructing or impeding the administration of justice under § 3C1.1; *or* 3) conduct involving "repeated acts over a period of time, unless it is clear that each instance was purely opportune." *See Moore*, 225 F.3d at 642 (affirming a district court's finding of "more than minimal planning" of the offense of conspiracy to steal and distribute stolen property on the ground that defendant transported the stolen property from Florida to Tennessee, burned the property's identification tags to avoid detection and buried the contraband, and fronted the property to others for resale and sold it). As the comment notes, the adjustment "will apply especially frequently in property offenses." U.S.S.G. § 1B1.1, comment. (n. 1(f)). Concerning the first factor, a crime need not "suggest[ ] planning in its most deliberative form; rather, it is sufficient if the evidence suggests merely that the crime was not committed in its simplest form." *Moore*,

225 F.3d at 642. The simplest form of the offense comprises the "minimal set of acts and preparations" that would constitute the commission of the offense. *United States v. Ludlow*, 27 Fed. Appx. 287, 2001 WL 1299251, at *2 (6th Cir. Aug.9, 2001) (unpublished opinion) (noting that "[p]lanning is something that occurs prior to the commission of a crime, not afterwards," and that the more-than-minimal-planning enhancement "is generally not the appropriate tool to punish a continued course of criminal conduct").

Defendant contends that his commission of the offense of interstate transportation of stolen property involved no more planning than is typical for the commission of that offense in its simplest form, no repeated acts over a period of time, or affirmative steps to conceal the offense. As to the first factor of whether the crime was committed in its simplest form, the factor upon which the district court relied, defendant contends that the offense simply involved defendant getting in a pickup truck in Ocala, Florida, and taking Interstate 75 all the way to Michigan, and that this simple crime could not have involved anything more than minimal planning. Defendant maintains that the record is devoid of any evidence of planning, let alone more than minimal planning. In support, defendant underscores that the district court was "left to speculate" that defendant had to have taken off from his normal activities to take the trip. Defendant also points out that the offense of conviction is for interstate transportation of stolen property, not for either the theft or disposal of that property.

---

4. The government is correct that, while defendant cites to U.S.S.G. § 2F1.1(b)(2)(A) as the relevant guideline, the proper guideline for a violation of 18 U.S.C. § 2314 is U.S.S.G. § 2B1.1(b)(4)(A). In any event, because both of these guidelines incorporate the definition of "more than minimal planning" under U.S.S.G. § 1B1.1, comment (f), our legal analysis would, nevertheless, be the same.

The government, in turn, argues that the simplest form of the offense of interstate transportation of stolen property is transporting the stolen property across a single state line. The government further argues that the offense involved more than minimal planning in committing the offense in its simplest form because it was a "complex, well-planned, trip across multiple state lines to fence stolen jewelry." The government underscores that defendant, having previously pawned jewelry stolen from the Leesburg, Florida, Service Merchandise store, McMullen's former employer, transported from Florida to Michigan $696,283 in high-end jewelry stolen from the Ocala, Florida. Service Merchandise store, for which defendant had previously worked, thereby crossing six state lines. The government also emphasizes that, in preparation for the commission of this crime, defendant composed a list cataloguing the stolen jewelry and had a gun and a large amount of cash in the vehicle. The government maintains that it is likely that defendant, along with McMullen, "knew the routine of the Ocala Service Merchandise [store] and used that knowledge to assist in the burglary and transportation of the stolen jewelry," and that "such inside knowledge used to facilitate the commission of a crime" should warrant the enhancement.[5]

The following elements comprise a violation of 18 U.S.C. § 2314: 1) transporting or causing the transportation, 2) in interstate commerce, 3) of property valued at $5,000 or more, 4) with knowledge that it has been stolen, converted, or fraudulently taken from its rightful owner. *United States v. Monus*, 128 F.3d 376, 384 (6th Cir.1997). To violate this statute, one need not know the value of the property—that it is over $5,000—or that the property is being transported in interstate commerce. *United States v. Kierschke*, 315 F.2d 315, 317 (6th Cir.1963). Thus, the simplest form of this crime might comprise a scenario like the following: a defendant opportunistically steals some property, or buys it from someone he sees stealing it, and then sells the property at the first pawn shop on the other side of the state line.

Here, however, the evidence supports the district court's finding that defendant's offense of the interstate transportation of stolen goods involved more than minimal planning. First, the record evidences planning and preparation for the sale of the stolen jewelry in Michigan. Defendant admitted that he and McMullen had transported the jewelry from Florida to Michigan with the intent of selling it there. Given this admission, it is especially likely that the list cataloguing the stolen jewelry by description and price, written in handwriting similar to defendant's, was to serve

---

**5.** To the extent that the government now suggests that defendant was involved with the *burglary* of the Ocala. Florida, Service Merchandise store, it had conceded before the district court, however, that there is not a preponderance of the evidence by which to establish this. Likewise, there is not a preponderance of the evidence by which to demonstrate defendant's participation in the burglary of the Leesburg, Florida, Service Merchandise store. The government relies on defendant's and McMullen's status as former employees of the Ocala and Leesburg stores, respectively, and defendant's prior pawning of jewelry stolen from the Leesburg store. Given the lack of sufficient evidence inculpating defendant in the stores' burglaries, it is unclear what weight, if any, these facts should have in the more-than-minimal-planning analysis. Perhaps, however, these facts, in demonstrating defendant's and McMullen's connections both to each other and to the stores, give rise to a reasonable inference that defendant and McMullen must have engaged in some form of planning regarding the transportation of the stolen jewelry to Michigan.

as a check-list for the sale of that property. Additionally, defendant admitted that he was to receive a percentage of the proceeds from the sale of the merchandise in Michigan. Thus, defendant had entered into a financial agreement regarding his share of the prospective proceeds from the sale of the stolen jewelry in Michigan. Moreover, the value and nature of the stolen jewelry likely required some planning so as to determine the best place for its disposal. It would have been difficult to sell the stolen jewelry in or near Florida, where the robbery would have been well-publicized, due to the greater risk of detection accompanying such publicity. Furthermore, due to the value of the individual pieces of stolen jewelry,[6] it would have been difficult to sell them in flea markets.

Second, the record evidences planning and preparation for the *transportation* of the high-end jewelry, valued at approximately $700,000. McMullen admitted that he had placed the jewelry in the "unusual" location of a toolbox in the back of the pick-up truck. Presumably, McMullen did so to conceal the jewelry and to transport it safely. Defendant also admitted to having known of the stolen jewelry's location in the truck and to having handled it. Moreover, the tool box also contained a loaded handgun; presumably, given the value of the jewelry, defendant and McMullen believed that a gun was necessary to protect both themselves and the jewelry from any robbers.

Third, the record evidences planning and preparation made necessary by the length of the trip.[7] While defendant impugns the district court's conclusion that the length of the trip required defendant to take time away from his regular activities, defendant himself had stated that he was working full-time at the time of the offense. Specifically, from 1999 to the time of the offense, defendant managed his fiance's beauty salon. Taking judicial notice of the fact that October 17, 2000, the day upon which the traffic stop in Michigan occurred, was a Tuesday, and that a round-trip drive from Florida to Michigan lasts approximately 48 hours, defendant, at a minimum, would have had to miss at least two business days of work, if not three.[8] As the district court noted, defendant had stayed in Michigan long enough to have rented a motel room in Dearborn, Michigan, and to have driven to and stopped at a residence in Detroit, Michigan. Thus, it is reasonable to believe that, in preparation for a trip of this length, defendant made arrangements to defer his normal activities, including his management of the beauty shop. Likewise, the length of the trip would likely call for one to arrange for a traveling companion so as

---

6. We note that, although we do not have the individual list prices for the 150 pieces of stolen jewelry, each price would be valued at over $4,600.00 if all of the pieces were of the same value.

7. Because the offense requires that the stolen property travel in interstate commerce—and, thus, at a minimum, entails traveling between two states—and because not all travel across more than two states requires planning or preparation—as perhaps with the closely adjoining states on the East coast—the bare fact that the travel spanned more than two states is insufficient, in itself, to trigger the more-

than-minimal-planning enhancement. *See Ludlow*, 2001 WL 1299251, at *2 (holding that "simple, necessary, adjuncts to the elements of the offense cannot provide a sole basis for the enhancement").

8. In finding that the drive to Michigan spanned two days, the district court relied on what it perceived to have been a concession on this issue by defendant. However, at the plea hearing, defendant had simply assented to the statement that the drive had taken "one or two days," thereby leaving open the possibility that it had taken only one day.

to trade-off driving. Indeed, defendant testified that he and McMullen had taken turns driving to Michigan due to the length of the trip. In sum, we find that a preponderance of the evidence exists to demonstrate that defendant's offense of the interstate transportation of stolen goods involved more than minimal planning.

For the preceding reasons, we AFFIRM the district court's application of a sentence enhancement for a crime involving more than minimal planning under U.S.S.G. § 2B1.1 (b)(4)(A).