RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 09a0091p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          *v.*

CHRISTOPHER J. HUNTER,
                    *Defendant-Appellant.*

No. 07-3698

_____

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 06-00061—Thomas M. Rose, District Judge.

Argued: January 22, 2009

Decided and Filed: March 9, 2009

Before: MARTIN and MOORE, Circuit Judges; GWIN, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Kevin M. Schad, SCHAD & SCHAD, Lebanon, Ohio, for Appellant. Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Kevin M. Schad, SCHAD & SCHAD, Lebanon, Ohio, for Appellant. Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee.

_____

## OPINION

_____

BOYCE F. MARTIN, JR., Circuit Judge. Christopher Hunter was convicted of possession of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1); conspiracy to distribute in excess of five kilograms of cocaine, in violation of 21 U.S.C.

_____
          [*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

1

§ 846; possession of a firearm in furtherance of a drug crime, in violation of 18 U.S.C.
§ 924(c)(1); and for being a felon in possession of a firearm, in violation of 18 U.S.C.
§ 922(g)(1). He now appeals.

Hunter makes eleven assignments of error:[1] (1) that the court constructively
amended count three of the indictment in giving jury instructions, or alternatively, that
count three fails to state a federal offense; (2) that there was insufficient evidence to
convict him of count one; (3) that the government failed to prove possession in counts
two, three, and four; (4) that the court abused its discretion in admitting a photo of
Hunter holding a gun; (5) that the Government knowingly used false testimony at trial;
(6) that the court abused its discretion in failing to instruct the jury on how to convert
ounces to grams; (7) that the Government improperly published a summary chart to the
jury; (8) that the court committed clear error in finding at sentencing that the conspiracy
involved in excess of fifty kilograms of cocaine; (9) that his counsel at sentencing had
a conflict of interest; (10) that the district court improperly calculated his criminal
history; and (11) that the court abused its discretion in failing to grant a hearing on
ineffective assistance of counsel.

We REVERSE Hunter's conviction and sentence for violating 18 U.S.C.
§ 924(c)(1), but we AFFIRM Hunter's other convictions and sentences. Accordingly,
we REMAND for such further proceedings consistent with this opinion as are necessary.

I.

In 1998, Christopher Hunter began selling cocaine in Dayton, Ohio, aided by an
acquaintance named Michael "Magoo" Stafford. The pair worked out of Stafford's
home, selling about an ounce of cocaine a week, with Hunter acquiring and packaging
the cocaine and Stafford delivering it to customers. Hunter's operation expanded in
2000, when he and Stafford rented an apartment on Fair Oaks with another acquaintance,
Jimmy Vroom. The trio sold  one to two ounces of cocaine a week from this location.

---

[1]Hunter raised nine of these issues through his court-appointed attorney. He raised two additional
assignments of error in a subsequent *pro se* brief.

Six to eight months later Hunter and Stafford moved to a place on Hudson, where they continued to sell cocaine. In 2002, Hunter and Stafford rejoined Jimmy Vroom at a house on Parkwood Drive. During this time, they were receiving an ounce or two of cocaine a day, and they had begun to process and repackage the cocaine themselves. This involved cutting the cocaine with another substance, putting it in a blender, wrapping the mixture into baggies, and pressing the bagged cocaine to harden it. The hardened cocaine was then broken into "rocks" and sold.

The men changed locations a number of times in the two years that followed, and Hunter brought in acquaintances Ricky Rainwater, Mike Williams, Mark "Big Mark" Williams, Johnny Baker, and Amy Fredricks to aid in distribution. Hunter's operation expanded to three to four ounces of cocaine a day by 2004. Throughout this time, Hunter carried a gun for protection.

Police began investigating Hunter's organization in April 2004, and a confidential informant made a controlled buy from Hunter and Amy Fredricks at Hunter's Linden Avenue apartment on April 30. When asked about selling four to five ounces at a future date, Hunter responded, "no problem." Based upon this, police obtained a warrant to search Hunter's residence on Gunckel Avenue, where they found Hunter, sitting with a gun nearby, Stafford, a man named Eric Hale, as well as a blender, a press, a scale, and crack cocaine in plastic baggies. Hunter was taken into custody but was later released. He then resumed selling cocaine from a place on Watervliet Avenue with his new girlfriend, Amanda Ward, and Hale. In early 2005, Hunter and Ward moved to an apartment on Maple Avenue in Centerville.

On March 23, 2005, Hunter and Ward went to the Microtel Hotel in Riverside. They checked in under Ward's name but paid with Hunter's cash. Hunter brought a large red cooler bag of cocaine into the room, as well as a press, coffee creamer (to cut the cocaine), and his gun. Once inside their room, Hunter began to mix and press cocaine; Ward passed out on the bed. Later in the evening, Hunter left the room to deliver cocaine to Ricky Rainwater in the stairwell outside. In doing so, he forgot his room key and locked himself outside. Ward, still asleep, did not answer her cell phone,

so Hunter called Rainwater, who sent a friend to pick Hunter up. He also called Stafford to explain the situation. Around this time, local police received an anonymous tip that drugs were being sold or used in the hotel room Hunter and Ward had rented, and two officers arrived on the scene to investigate. When they knocked on the door, Ward answered. Upon searching the room, the officers discovered the cocaine and the gun. At this time, Ward told officers that her boyfriend, Christopher Hunter, would be back soon and would explain everything. To corroborate her story, Ward showed police a tattoo of his name on her neck and photographs of them together that she kept in her purse. A short while later, Hunter returned to the scene, riding shotgun in a car driven by a friend. He told officers that he did not know anyone named Amanda Ward, and police then let him go.

A month later, Ward was stopped for a traffic infraction and caught with a bag of cocaine. Police then obtained a search warrant for Ward and Hunter's apartment on Maple Avenue, and searched the apartment later that night. They found Hunter, Stafford, a scale with cocaine residue, creatine (a legal substance sometimes used for cutting cocaine), a white substance believed to be cocaine, and $1,035 in cash. The investigation was then turned over to the ATF, which secured the cooperation of Johnny Baker against Hunter. Through Baker's cooperation, ATF agents recorded a number of telephone conversations with Hunter and the members of his organization, and made several controlled buys from them. Stafford, Rainwater, Big Mark Williams, Jimmy Vroom, and Hunter all participated in the various deliveries. The ATF then obtained a warrant for Hunter's arrest, and arrested him on November 8, 2005. A subsequent search of Hunter's apartment recovered cocaine, notes recording drug transactions, and a letter from Amanda Ward addressed to him.

A grand jury in the Southern District of Ohio indicted Hunter for conspiracy to distribute more than five kilograms of cocaine, possession of cocaine with intent to distribute, possession of a firearm in furtherance of a drug crime, and for being a felon in possession of a firearm. A superceding indictment added a co-defendant, who pleaded guilty. Hunter pleaded not guilty and proceeded to trial, where almost all of his known

associates testified against him,   including Amanda Ward, Mark Williams, Mike Williams, Johnny Baker, Ricky Rainwater, and Michael Stafford.  The jury found Hunter guilty on all four counts.  Hunter then filed a motion for judgment of acquittal or for a new trial, which the district court denied.  Hunter filed a similar motion *pro se* about eight months later; the district court denied that motion as well.

Hunter's trial counsel withdrew prior to sentencing, and new counsel was appointed to represent him during sentencing.  Hunter's new counsel notified the court of a potential conflict of interest in representing Hunter, and the court held a hearing to address this issue.  At that hearing, the court informed Hunter of his rights and allowed Hunter to waive any potential conflict.  The district court then sentenced Hunter to 360 months for count one, a concurrent term of 240 months for count two, a concurrent term of 120 months for count four, and a mandatory consecutive term of 60 months for count three for a total of 420 months.  Hunter now appeals.

II.

Hunter makes eleven assignments of error: (1) that the court constructively amended count three of the indictment in giving jury instructions, or alternatively, that count three fails to state a federal offense; (2) that there was insufficient evidence to convict him of count one; (3) that the Government failed to prove possession in counts two, three, and four; (4) that the court abused its discretion in admitting a photo of Hunter holding a gun; (5) that the Government knowingly used false testimony during his trial; (6) that the court abused its discretion in failing to instruct the jury on how to convert ounces to grams; (7) that the Government improperly published a summary chart to the jury; (8) that the court committed clear error in finding at sentencing that the conspiracy involved in excess of fifty kilograms of cocaine; (9) that his counsel at sentencing had a conflict of interest; (10) that the district court improperly calculated his criminal history; and (11) that the court abused its discretion in failing to grant a hearing on ineffective assistance of counsel.

### 1.     *Sufficiency of the Indictment and Constructive Amendment*

Hunter argues that the district court constructively amended the indictment when it instructed the jury on count three, possession of a firearm in furtherance of a drug trafficking offense under 18 U.S.C. § 924(c)(1), and alternatively that count three is void for failing to state a federal offense. Because Hunter did not raise these challenges in district court, we review for plain error.  Fed. R. Crim. P. 52(b); *Johnson v. United States*, 520 U.S. 461, 467 (1997).  Under plain-error review, "before an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'" *Johnson*, 520 U.S. at 466-67.  The phrase "affects substantial rights" means "in most cases . . . that the error must have been prejudicial: It must have affected the outcome of the district court proceedings."*United States v. Olano*, 507 U.S. 725, 734 (1993).  "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Johnson*, 520 U.S. at 467.

As we explained in *United States v. Combs*, 369 F.3d 925 (6th Cir. 2004), 18 U.S.C. § 924(c)(1) contains two separate offenses: one for possession of a firearm "in furtherance of" a drug trafficking crime, and one for using or carrying a firearm "during and in relation to" a drug trafficking crime.  "Use," we explained, is a higher standard of conduct than "possession," but "in furtherance of" is a higher standard of participation than "during and in relation to."   Thus, in *Combs* we held that the district court constructively amended count four of the indictment when the defendant was charged with the "possession" crime, but the jury instructions mixed in the lower standard of participation from the "use" crime and the court ultimately issued a judgment against Combs for the "use" offense.  *Id.* at 936.  Thus, the district court "literally altered" the indictment, and Combs was convicted of a crime that was not the subject of his indictment.   We held this to be plain error because it directly violated the fifth amendment's guarantee that a defendant be held answerable only for those charges levied by a grand jury.  *Id.* at 935.

Likewise, in *United States v. Castano*, 543 F.3d 826 (6th Cir. 2008), we held that a constructive amendment of the indictment occurred when the defendant was charged with a "use" crime, but the jury instructions, verdict form, and judgment characterized the crime as "possession of a firearm during a drug trafficking crime." This not only cross-matched the elements of the distinct "possession" and "use" crimes as in *Combs*, we observed, it omitted the words "and in relation to" from the correct standard and thus stated an "erroneous, non-existent standard of participation." *Id.* at 837.**2** Because we found these errors to create "significant doubt that the jury convicted Castano of an offense that § 924(c) criminalizes," we held the district court committed plain error and reversed Castano's § 924(c) conviction. *Id.*

Hunter's prosecution for count three was rife with errors similar to those we found to be plain in *Combs* and *Castano*. To begin with, count three of the indictment incorrectly charged Hunter with a "possession" offense, as it alleged that Hunter possessed a firearm both "during and in relation to" a drug trafficking offense and "in furtherance of" a drug offense. This error in the indictment carried over into Hunter's trial, when the district court erroneously informed the jury that Hunter was charged with possession of a firearm "during and in relation to" a drug trafficking crime, and mixed in this lower standard of participation in its instructions along with the correct one. This error was compounded in the verdict form given to the jury in this case, which characterized count three as "possession of a firearm during a drug offense." The jury subsequently reported a finding of guilt for "possession of a firearm during a drug offense," and the district court entered a judgment against Hunter for "possession of a firearm during a drug offense." As we noted in *United States v. Castano*, 543 F.3d 826, 837 (6th Cir. 2008), "during a drug offense" is "an erroneous, non-existent standard of participation," and "possession of a firearm during a drug offense" is a *non-existent crime*.

---

**2**The district court entered judgment against Castano for the "possession" crime.

Assuming that count three of the indictment against Hunter adequately charges him with a crime to begin with,[3] we believe the proceedings at Hunter's trial amended the indictment. Here, as in *Combs*, the district court erroneously informed the jury that Hunter was charged with possession of a firearm "during and in relation to" a drug trafficking crime, and mixed in this lower standard of participation in its instructions. More troubling still, as in *Castano*, the verdict form in this case characterized count three as "possession of a firearm during a drug offense," and the jury reported a finding of guilt for "possession of a firearm during a drug offense," which is not federal offense. Finally, and beyond both *Combs* and *Castano*, the district court here issued a final "judgment in a criminal case" in count three for "possession of a firearm during a drug offense." As we explained in *Castano*, no such crime exists in federal law.

These errors create more than "significant doubt that the jury convicted [the defendant] of an offense that § 924(c) criminalizes," *Castano*, 543 F.3d at 837; they confirm that the jury convicted Hunter of a non-existent offense. Hunter was not indicted for "possession of a firearm during a drug trafficking offense," nor could he be. So under *Combs* and *Castano* it was plain error to subsequently obtain a jury verdict and judgment against Hunter for the same. Doing so "directly infringe[d] upon the Fifth Amendment guarantee to hold [him] answerable only for those charges levied by a grand jury." *Combs*, 369 F.3d at 935; *Castano*, 543 F.3d at 835 (quoting *Combs*). Accordingly, we reverse Hunter's conviction under 18 U.S.C. § 924(c)(1).

### 2.     *Sufficiency of the Evidence as to Count One*

Hunter argues that there was insufficient evidence presented at trial to support the jury's finding that Hunter conspired to distribute in excess of five kilograms of cocaine in violation of 21 U.S.C. § 846. This finding must be upheld unless no rational trier of fact could have found this element beyond a reasonable doubt. *United States v. Lloyd*, 10 F.3d 1197, 1210 (6th Cir. 1993).

---

[3]We need not address this issue because we find that a constructive amendment occurred.

To satisfy the five kilogram requirement of 21 U.S.C. § 841(b)(1)(A), the Government had to produce evidence that Hunter's operation distributed one ounce of cocaine per day for more than 176 days.[4] At trial, a number of Hunter's associates testified as to the volume of cocaine that Hunter distributed at various points during his seven years of operation. This testimony established that Hunter distributed an ounce or more of cocaine daily for a number of years. Ricky Rainwater, for example, testified that he sold an average of five to six ounces of cocaine a week on Hunter's behalf for three years, from 2002 to 2005. Thus, there was sufficient evidence in the record to support the jury's finding that Hunter conspired to distribute in excess of five kilograms of cocaine.

### 3.     *Sufficiency of the Evidence of Possession in Counts 2 and 4*

Hunter argues that the evidence presented at trial was not sufficient to support the jury's finding that Hunter possessed a gun and cocaine at the Microtel on March 23, 2005. This finding was essential to his guilt for counts two and four. It must be upheld unless no rational trier of fact could have found the element of possession beyond a reasonable doubt. *Lloyd*, 10 F.3d at 1210.

Because Hunter challenges only the possession element of each offense, and because the standard for possession is the same under each statute, we will discuss the element of possession generally. Either actual or constructive possession is sufficient to satisfy the possession element of these crimes. *United States v. Bailey*, No. 06-5576 slip op. at 4 (6th Cir. Jan. 20, 2009) (amended opinion) (discussing 18 U.S.C. § 922(g)(1)); *United States v. Welch*, 97 F.3d 142, 150 (6th Cir. 1996) (discussing 21 U.S.C. § 841(a)(1)). Actual possession exists when an individual knowingly has direct physical control over a thing at a given time, and constructive possession exists when a person does not have physical possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others. *Bailey*, No. 06-5576 slip op. at 4-5 (citing *United States v. Craven*,

---

[4]One ounce equals 28.3495 grams.  Five-thousand grams divided by 28.3495 is 176.37.

478 F.2d 1329, 1333 (6th Cir. 1973)); *Welch*, 97 F.3d at 150 (citing *Craven*, 478 F.2d at 1333).

Here, the evidence presented at trial was sufficient to prove that Hunter possessed the gun and cocaine police recovered from the Microtel on March 23, 2005. Amanda Ward testified that she was with Hunter that night, that the two rented a room together, and that Hunter carried his gun and a bag of cocaine into the hotel room along with equipment he used to process and repackage cocaine. She also testified that he began packaging the drugs he brought in. Ricky Rainwater testified that he met Hunter in a stairwell outside the room that evening. Stafford testified that Hunter called him that night and complained that he "left his cocaine, a gun, and a press, and some of his marijuana in the hotel room and couldn't get to it" because he locked himself out and Ward was not answering her cell phone. Rainwater received a similar phone call and sent a friend to pick Hunter up. Later that night, police recovered the cocaine and the gun from the hotel room, and Ward told police that these belonged to Hunter and that he had carried them into the room earlier that night.

Based upon this evidence, a rational factfinder could conclude beyond a reasonable doubt that Hunter possessed both the gun and the cocaine either under a theory of actual or constructive possession. A jury could reasonably find that Hunter had actual possession of the gun by carrying the cocaine and gun into the hotel, or that he had constructive possession by having the knowledge and power to exercise control over it while inside. The fact that Hunter left the gun in the hotel room later in the night does not change the fact that he possessed the gun earlier in the evening. Thus, the evidence presented at trial was sufficient to support the jury's finding that Hunter possessed the gun and the drugs at the Microtel on March 23, 2005.

### 4.    *Admission of a Photo of Hunter Holding a Gun*

Hunter argues that the district court erred in admitting a photo of him holding a gun. This ruling is reviewed for abuse of discretion. *Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 897 (6th Cir. 2004). The court did not abuse its discretion in admitting this photo. The gun in the photo was identical to the gun found in the March

23, 2005, search of Hunter's hotel room. The photo was given to police by Amanda Ward, who testified she had taken the photo near the beginning of 2005, that the gun in the photo was the same gun found in the Microtel on March 23, 2005, and that Hunter possessed the gun in the photo on that night. Thus, the photo tended to establish Hunter's ownership of the gun as well as corroborate Ward's testimony. Because of this, it was highly relevant. Hunter asserts that the admission of the photo was unduly prejudicial because it was "menacing" (which is debatable), but given the photo's evidentiary value, the district court did not abuse its discretion in admitting it. *See* Fed. R. Evid. 403.

### 5.     *Knowing Use of False Testimony*

Hunter argues in his *pro se* brief that the United States knowingly used false testimony in his trial. Hunter asserts that Ricky Rainwater was the mastermind of the conspiracy, and that the Government knew this because it had recorded a conversation in which Rainwater says Hunter is trying to get cocaine from him (as opposed to the other way around).[5] To succeed on a claim that his conviction was obtained with evidence the Government knew or should have known was false, Hunter must show: (1) that the statements were actually false; (2) the statements were material; and (3) the prosecution knew they were false. *United States v. Farley*, 2 F.3d 645, 655 (6th Cir. 1993). Because this issue was not timely raised in the district court, we review for plain error. Fed. R. Crim. P. 52(b); *Johnson*, 520 U.S. at 467.

Here, Hunter has not offered evidence sufficient to show that the testimony was false or that Government knew this to be true. Apart from his own assertion, the only evidence Hunter offers in support of his claim is the conversation between Rainwater and the confidential informant. But this conversation does not show that Rainwater's testimony was false or that the Government was aware of this. At most, it shows that some of Rainwater's testimony was inconsistent, which was already clear at trial.

---

[5]Hunter also contends that Rainwater lied about the amount of drugs involved in the conspiracy, and that the Government knew of this, but he offers no evidence other than his own assertion to support this claim.

Further, this isolated conversation sheds little light on the nature of Hunter's activities during the whole seven-year period in question, and it is inconsistent with the testimony of the half-dozen individuals that testified against Hunter at his trial.

For the foregoing reasons, we reject Hunter's claim that the United States knowingly used false testimony in his trial.

### 6.     *Failure to Instruct the Jury on How to Convert Ounces to Grams*

Hunter argues that the judge erred in failing to instruct the jury on how to convert ounces to grams because a finding that his operation possessed five kilograms of cocaine was an element of the crime for which he was convicted. Generally, a district court's decision not to give a jury instruction will only be reversed if "the proposed instruction is correct, is not substantially covered by the charge, and is so important that failure to give it substantially impairs the defense." *United States v. Blood*, 435 F.3d 612, 623-24 (6th Cir. 2006). We review this claim for plain error. Fed. R. Crim. P. 52(b); *Johnson*, 520 U.S. at 467.

The district court's failure to instruct the jury on the conversion ratio for ounces to grams was not plain error. Contrary to Hunter's assertion, the *conversion ratio* of ounces to grams (28.3495 grams per ounce) is not an element of the crime for which he was convicted. And, in any case, the conversion ratio was the subject of testimony at trial. Thus, the failure to give an instruction on the conversion ratio did not "substantially impair the defense."

### 7.     *Alleged Publication of a Summary Chart to the Jury*

Hunter argues that the Government deprived him of a fair trial by showing a summary chart to the jury. It is not clear whether the Government did so, as the only evidence of this is Hunter's own assertion (there is no indication of this in the record). However, even if it did, this would not constitute reversible error because it would not affect his substantial rights or seriously affect the fairness of his trial. Fed. R. Crim. P. 52(b); *Johnson*, 520 U.S. at 467.

8.    *The Court's Finding that the Conspiracy Involved Greater than Fifty Kilograms*
      *of Cocaine*

Hunter also challenges the district court's finding during sentencing that the conspiracy involved more than fifty kilograms of cocaine, which yielded an offense level of 36 under U.S. SENTENCING GUIDELINES MANUAL § 2D1.1. This factual finding must be upheld unless it is clearly erroneous. *United States v. King*, 516 F.3d 425, 427 (6th Cir. 2008).

As noted above, a number of Hunter's associates testified at trial as to the volume of his daily cocaine sales and the length of the conspiracy. Stafford and Rainwater offered specific estimates as to the amount of cocaine Hunter distributed from 2002 to 2004; when combined, these estimates result in a range of 46.49 to 69.17 kilograms. Prior to this period, Stafford also testified that Hunter received one to three ounces a day during the year they lived together on Wayne Avenue, and an ounce a couple of times a week when they lived on Fair Oaks. Ward, Rainwater, and Williams all identified additional times and locations that Hunter received or processed cocaine, but did not make specific estimates as to the amounts involved. Consistent with the testimony at trial, the presentence report estimated Hunter to be responsible for the distribution of between 67 and 96 kilograms of cocaine.

Because Hunter has not offered evidence to contradict either the testimony at trial or the estimate of the presentence report, the district court was entitled to rely on those estimates in making its ruling. *See United States v. Geerken*, 506 F.3d 461, 467 ("When a defendant fails to produce any evidence to contradict the facts set forth in the PSR, a district court is entitled to rely on those facts when sentencing the defendant."); *United States v. Pruitt*, 156 F.3d 638, 647 (6th Cir. 1998) ("Testimonial evidence is sufficient to support a finding as to the quantity of drugs attributable to the defendant."). Thus, the district court's determination that Hunter conspired to distribute more than fifty kilograms of cocaine was not clearly erroneous.

### 9.     *Sentencing Phase Counsel's Alleged Conflict of Interest*

Hunter's trial counsel withdrew prior to sentencing, and he was appointed new counsel for sentencing.  His new appointed counsel had previously represented one of Hunter's co-defendants, "Big Mark" Williams, in negotiating a plea agreement.  Hunter now claims that this violated his Sixth Amendment right to conflict-free counsel. *Gillard v. Mitchell*, 445 F.3d 883, 890 (6th Cir. 2006).  *Gillard* is an application of *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and likewise requires a showing of both cause and prejudice.  445 F.3d at 890.  To succeed in this context, a defendant must show both that his counsel (1) had "an actual conflict of interest," and (2) acted adverse to his client's interests because of the conflict.  *Strickland*, 466 U.S. at 692.  Hunter has not made such a showing here.

Williams pleaded guilty "three to four months before the jury verdict in Mr. Hunter's case," and was sentenced before Hunter's trial counsel withdrew.  And, while Williams testified at Hunter's trial, the lawyer who represented Hunter at sentencing was not involved in preparing Williams to do so.  Thus, he did not "actively represent conflicting interests," *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980), and Hunter has not established ineffectiveness.  *United States v. Hall*, 200 F.3d 962, 965-66 (6th Cir. 2000) ("We will not find an actual conflict unless appellants can point to 'specific instances in the record to suggest an actual conflict or impairment of their interests.'").  Hunter also fails to establish prejudice, as he does not offer evidence of any adverse choices his counsel made at sentencing because of his prior representation of Williams.

In any case, Hunter waived any conflict of interest that may have existed.  The appointed counsel brought the potential conflict to the attention of the court prior to commencing representation, and the court held a hearing on the matter. In the hearing, the court inquired into the nature of the conflict, advised Hunter of his rights, and Hunter voluntarily agreed to the representation.  This is sufficient to waive any conflict that may have existed, absent a showing of a Sixth Amendment violation under *Strickland*.  *See Hall*, 200 F.3d at 965-66.

### 10.    *Criminal History Calculation*

Hunter's criminal history was calculated in the presentence report, and the trial court adopted its calculation at sentencing. Hunter's qualifying prior offenses yielded a total of twenty criminal history points. However, because no more than four points may be added under U.S. SENTENCING GUIDELINES MANUAL § 4A1.1(c), Hunter received only four points under that section. In addition to the two points he received under § 4A1.1(b) for his prior conviction for illegally processing a drug document, and the two points he received under § 4A1.1(d) for being on probation during the conspiracy, Hunter was assessed a total of eight criminal history points.

Hunter claims that his criminal history was inflated under § 4A1.1(c) by certain traffic infractions that no longer count for criminal history purposes as a result of recent amendments to the Sentencing Guidelines. U.S.S.G. App. C, Amend. 709 (effective Nov. 1, 2007). The problem with this argument is that he only received four points under this section in the first place. Thus, while it is true that some of his prior convictions would no longer count, he would still receive four points under the current Guidelines and his criminal history score would be unaffected by the amendments.[6] Therefore, we affirm his sentence.

### 11.    *Ineffective Assistance of Counsel*

Prior to his sentencing hearing, Hunter filed a *pro se* motion for a new trial. He asserts that the district court erred in failing to grant a hearing on this matter. This decision is reviewed for abuse of discretion. *Alley v. Bell*, 307 F.3d 380, 389 (6th Cir. 2002).

Hunter's motion was filed eight months after the end of his trial, and it did not rest upon newly discovered evidence. This was well beyond the seven-day period provided for in Fed. R. Crim. P. 33(b)(2). Consequently, the district court did not err in

---

[6]Hunter would still receive points for his 1994 conviction for theft, his 1994 DUI (*see* U.S.S.G. § 4A1.2, cmt. n.5), his 1994 conviction for unauthorized use of property, his 1995 conviction for illegal processing of a drug document, his 1999 and 2000 convictions for drug abuse, his 1999 conviction for "fleeing and eluding," his 2000 conviction for possession of drug paraphenalia, his three convictions for possession of a controlled substance in 2000-01, and his 2005 conviction for possession of marijuana.

failing to hold a hearing on the matter; it had no authority to do so.  *United States v. Vincent*, 20 F.3d 229, 237 (6th Cir. 1994) ("The seven-day period for filing a motion for a new trial, based on any ground other than newly discovered evidence, is a jurisdictional limit on the district court's power to act."); *United States v. Kuehne*, 547 F.3d 667, 692-93 (6th Cir. 2008) (holding a district court did not abuse its discretion in denying a pro se motion for a new trial because the motion was untimely under Fed. R. Crim. P. 33, even though ineffective assistance of counsel was the reason for the delay).

Hunter also argues that remand is appropriate to develop a factual record to address this issue.  However, we generally do not address ineffective assistance claims on direct appeal, *United States v. Gonzalez*, 501 F.3d 630, 644 (6th Cir. 2007), and Hunter has not offered evidence to justify departing from that practice here.

## III.

For the foregoing reasons, we REVERSE Hunter's conviction and sentence for violating 18 U.S.C. § 924(c)(1), but we AFFIRM Hunter's other convictions and sentences.  Accordingly, we REMAND for such further proceedings consistent with this opinion as are necessary.