**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0412n.06

**No. 08-5322**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Jun 09, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| MARSHALL TILGHMAN, | ) | EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |

Before: MARTIN, RYAN and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. A jury convicted Marshall Tilghman of assault and possession of a prohibited object in a prison. Because Tilghman's challenges to his convictions and sentence are unconvincing, we affirm.

I.

On August 1, 2007, Tilghman, a federal inmate, stabbed Joseph Hobbs, another inmate, with a makeshift knife, otherwise known as a shank. Hobbs (along with several other inmates) testified that Tilghman started the fight to retaliate against Hobbs for labeling Tilghman a snitch. By their account, Tilghman approached Hobbs from behind and struck him on the head. When Hobbs responded by knocking Tilghman to the ground, Tilghman produced a knife and stabbed Hobbs in the abdomen.

Tilghman told a different story. Hobbs, he said, provoked the fight and delivered the first blow, punching Tilghman after accusing him of telling prison officials about Hobbs' illegal cigarette use. After Hobbs' punch knocked Tilghman down, Tilghman saw a knife "drop[] to the ground." R. 46 at 23. Acting on "instinct," Tilghman grabbed the knife and "shoved it out" at Hobbs. *Id.*

The jury rejected Tilghman's self-defense theory and convicted him of assault causing serious bodily injury, *see* 18 U.S.C. § 113(a)(6), and possession of a prohibited object, *see id.* § 1791(a)(2). It acquitted Tilghman, however, of two more-serious charges: assault with intent to murder, *see id.* § 113(a)(1), and assault with a dangerous weapon with intent to do bodily harm, *see id.* § 113(a)(3).

At sentencing, the district court grouped Tilghman's two convictions together, *see* U.S.S.G. § 3D1.2(c), and applied a base-offense level of 14—the level applicable to aggravated assaults, *see id.* §§ 2A2.2(a), 3D1.3(a). It then added three enhancements: (1) a two-level enhancement because the assault involved "more than minimal planning," *id.* § 2A2.2(b)(1); (2) a four-level enhancement because Tilghman "used" a "dangerous weapon" in committing the assault, *id.* § 2A2.2(b)(2)(B); and (3) a six-level enhancement because Hobbs sustained "near life-threatening injury," R. 42 at 5; U.S.S.G. § 2A2.2(b)(3)(E). With a total-offense level of 26 and a criminal-history category of VI, Tilghman's guidelines range came to 120–150 months.

The district court sentenced Tilghman to 120 months for the aggravated-assault conviction and 60 months for the possession-of-a-prohibited-object conviction—to run concurrently.

II.

Tilghman first appeals his convictions on the ground that insufficient evidence supports them. In reviewing a sufficiency challenge, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

A.

As to his assault conviction, Tilghman maintains that the jury should have accepted his self-defense theory as a matter of law. Although an individual may defend himself against the immediate use of unlawful force, *see Brown v. United States*, 256 U.S. 335, 343 (1921); 2 Wayne R. LaFave, *Substantive Criminal Law* § 10.4 (2d ed.), he must use "only as much force as reasonably appears to be necessary under the circumstances," *Sixth Circuit Pattern Criminal Jury Instructions* § 6.06 (2005). The government bears the burden of proving beyond a reasonable doubt that the defendant did not act in self defense. *Id*.

A rational trier of fact could have found beyond a reasonable doubt that Tilghman was not acting in self defense when he stabbed Hobbs. For one, substantial evidence showed that Tilghman prompted the fight by approaching Hobbs from behind and striking him on the back of the head—a fact that normally forecloses a self-defense argument, *see United States v. Hedberg*, 98 F. App'x 498, 499 (6th Cir. 2004). For another, a reasonable juror could conclude that Tilghman used an unreasonable amount of force to defend himself. By all accounts, Hobbs hit Tilghman just once with

his hands. That single blow, the jury could well have concluded, was not sufficiently threatening to justify Tilghman's extreme response—stabbing Hobbs in the abdomen with a shank. Tilghman, the jury learned, had other means of defending himself: He was a regular weightlifter at the prison who presumably could have met Hobbs' nondeadly attack with nondeadly force. *Cf.* 2 LaFave, *Substantive Criminal Law* § 10.4(b).

Resisting this conclusion, Tilghman attacks the credibility and reliability of the testimony given by Hobbs and the other inmates. But in evaluating a sufficiency challenge, we "do not independently assess the credibility of witnesses or the weight of the evidence." *United States v. Guthrie*, 557 F.3d 243, 253 (6th Cir. 2009). Those are questions for the jury.

B.

Also unavailing is Tilghman's challenge to his possession-of-a-prohibited-object conviction. Even though a knife is a "prohibited object," 18 U.S.C. § 1791(a)(2), Tilghman argues that there was insufficient evidence to show that he ever "possesse[d]" it, *id*. We disagree.

An individual "possesses" an object when he "has direct physical control over a thing at a given time," *United States v. Hunter*, 558 F.3d 495, 504 (6th Cir. 2009), and Tilghman had physical control of the knife at some point in the encounter. Tilghman himself testified that, after he saw the knife drop to the ground, he "grabbed it" and "shoved it out" at Hobbs. R. 46 at 23. Voluntarily grabbing a knife—and holding it long enough to stab someone—surely counts as precisely the kind

of "direct physical control" that the statute prohibits. Indeed, the main reason for prohibiting inmates from possessing knives in prison is to prevent them from using them violently.

But even if that were not the case, other evidence shows that Tilghman possessed the knife for longer than this brief moment. Hobbs testified that the knife was not his and that Tilghman was the one who "brought it to the party." R. 45 at 220. Other witnesses confirmed Hobbs' account, testifying that they saw Tilghman pull the knife from his "side" or "waistband." *Id*. at 124–25, 178, 189, 197.

On cross-examination, it is true, some witnesses gave partially contradictory testimony, sometimes admitting they were less sure about how Tilghman got the knife. But the government was able to rehabilitate some of that testimony on redirect, and in any event it was the jury's prerogative (not ours) to weigh these marginal inconsistencies, *see United States v. Newsom*, 452 F.3d 593, 608 (6th Cir. 2006).

III.

In appealing his sentence, Tilghman argues that the district court made several errors in calculating his guidelines range, resulting in a procedurally unreasonable sentence. We give fresh review to the court's legal conclusions and clear-error review to its factual findings. *United States v. Maken*, 510 F.3d 654, 656–57 (6th Cir. 2007).

A.

Tilghman first argues that the district court erred by finding that the assault "involved more than minimal planning," a factual finding that carries a two-level enhancement. U.S.S.G. § 2A2.2(b)(1); *see also United States v. Moore*, 225 F.3d 637, 642 (6th Cir. 2000).

Sentencing courts apply such enhancements if the assault involved "more planning than is typical for commission of the offense in a simple form." U.S.S.G. § 2A2.2(b)(1), app. note 2. The most "simple form" of an offense means "the minimal set of acts and preparations that would constitute the commission of the offense." *United States v. Pando*, 102 F. App'x 944, 947 (6th Cir. 2004) (internal quotation marks omitted); *see Moore*, 225 F.3d at 642.

The district court did not clearly err in concluding that Tilghman engaged in "more than minimal planning." Tilghman had a motive to plan the assault: Hobbs had accused him of being a "snitch," an accusation Tilghman described as "serious" because "[e]verybody goes after a snitch." R. 46 at 36. Other witnesses confirmed the seriousness of the label, testifying that snitches are "despised," R. 45 at 74, that "[t]heir life can be in danger," *id*. at 157, and that snitches can be the subject of attacks or assaults. Tilghman also telegraphed his intent to respond to Hobbs' accusation by threatening Hobbs in the days leading up to the assault. After Hobbs accused Tilghman of ratting him out to prison staff, Tilghman told Hobbs, "You know I'll kill," *id*. at 212. Two days later, Tilghman repeated the threat, telling Hobbs, "I'm still going to kill you," *id*.

The nature of the assault also suggests that Tilghman took time to plan it. Witnesses testified that Tilghman, unprovoked by Hobbs, followed Hobbs down a prison corridor, approached him from behind and struck him in the back of the head—which itself does not sound spontaneous. Pointing in the same direction, Tilghman brought the concealed knife with him to the encounter. Because inmates must pass through metal detectors at various places in the institution, the fact that Tilghman had the knife with him at the time of the assault suggests that he planned to confront Hobbs at that time. Otherwise, Tilghman presumably would have left the knife in a normal hiding place, such as a living area or common room, to avoid the risk that prison officials would discover it and discipline him.

Tilghman's actions after the attack also support the court's conclusion. He ran to his cell and removed his bloody clothes. He then ran to the laundry room, stuffed his bloody garments into a washer and hid the knife underneath a nearby garbage can. These actions suggest that Tilghman thought through how he would dispose of incriminating evidence ahead of time, a standard hallmark of advanced planning. Because all of this evidence shows that Tilghman went beyond the "minimal set of acts and preparations that would constitute the commission of the offense," *Pando*, 102 F. App'x at 947, the district court did not clearly err in applying the enhancement.

B.

Tilghman next argues that the district court engaged in impermissible double counting when it applied a four-level enhancement because Tilghman "otherwise used" a "dangerous weapon" in committing the assault. U.S.S.G. § 2A2.2(b)(2)(B). Because his base-offense level already accounted for the knife, Tilghman argues that the enhancement punishes him twice for the same conduct.

A sentencing court engages in "double counting" when "precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways." *United States v. Farrow*, 198 F.3d 179, 193 (6th Cir. 1999). Double counting is impermissible unless "it appears that Congress or the Sentencing Commission intended to attach multiple penalties to the same conduct." *Id*. at 194.

Here, however, the four-level enhancement punishes an aspect of Tilghman's conduct different from what the base-offense level penalizes. *See United States v. Eversole*, 487 F.3d 1024, 1030 (6th Cir. 2007). The enhancement accounts for the fact that Tilghman "used" a "dangerous weapon" in committing the assault, while his base-offense level accounts for the fact that he inflicted "serious bodily injury" on Hobbs. U.S.S.G. § 2A2.2(a), app. note 1. Because these sentencing decisions focus on different aspects of Tilghman's conduct—the degree of injury he inflicted on the one hand, the means by which he inflicted it on the other—it is not "double counting" to include both of them.

True, the record suggests that the district court relied on a different ground in setting Tilghman's base-offense level: that the assault "involved . . . a dangerous weapon with intent to cause bodily injury." *Id*. But we need not decide whether that reasoning resulted in impermissible double

counting—though our case law and the guidelines suggest it did not, *see Farrow*, 198 F.3d at 194–95; U.S.S.G. § 2A2.2(a), background notes—because an alternative ground separately justifies classifying Tilghman's assault as an "aggravated" one: the fact that Hobbs suffered serious bodily injury. *See United States v. Tissnolthtos*, 115 F.3d 759, 763 (10th Cir. 1997).

## C.

Tilghman argues that the district court erred when it added three points to his criminal-history score because he committed the offenses while confined on a sentence of imprisonment of at least 60 days. *See* U.S.S.G. § 4A1.1(d)–(e). This adjustment, too, amounted to double counting, Tilghman says, because he was convicted of a crime—possessing a prohibited object in prison, *see* 18 U.S.C. § 1791(a)(2)—that necessarily must occur in prison, proving that his base-offense level already accounts for the fact that he was in prison when he committed the crimes.

Tilghman waived this argument by failing to develop it in his appellate brief. He devotes only two sentences to the issue, one of which merely "asserts" that double counting occurred, the other of which merely "requests" that we review the issue. Br. at 26. A perfunctory conclusion does not sufficiently develop an argument to preserve it, and neither does a request that *we* develop the issue for him. *See United States v. Catalan*, 499 F.3d 604, 606 (6th Cir. 2007).

At any rate, there was little to say about the argument because there is nothing to recommend it. That Tilghman was in prison at the time he committed both offenses did not "factor[] into his sentence in two separate ways," *Farrow*, 198 F.3d at 193, because it did not factor into his base-

offense level. In calculating Tilghman's guidelines range, the district court permissibly "grouped together" Tilghman's assault and possession convictions, noting that the possession offense was a "specific offense characteristic in . . . the guideline applicable to" aggravated assault. U.S.S.G. § 3D1.2(c). Because § 3D1.3 tells a sentencing court to use the "highest offense level of the counts in the Group" as the base-offense level, the district court used the base offense applicable to aggravated assault, not the base offense applicable to possession of a prohibited object. And aggravated assault, all agree, does not include the element that the defendant was imprisoned. *See* 18 U.S.C. § 113(a)(6). Because Tilghman's assault conviction did not account for the fact that he was imprisoned at the time he committed the offense, it is not double counting to account for that aspect of Tilghman's conduct by adding three points to his criminal-history score under § 4A1.1(d) & (e).

Any error on this issue, it bears adding, could not have changed Tilghman's guidelines range. Even without the three-point addition, Tilghman's criminal-history category—category VI—would have remained the same: (1) His prior criminal convictions alone justify a criminal-history score of 21, well above the 13 points needed to place him in category VI; and (2) Tilghman is a career offender under U.S.S.G. § 4B1.1, a fact that automatically places him in category VI, *see id*. § 4B1.1(b). Because the three-point addition made no difference to his guidelines range, any supposed error would have been harmless error. *See United States v. Charles*, 138 F.3d 257, 268 (6th Cir. 1998); *see also United States v. Mitchell*, 295 F. App'x 799, 803 (6th Cir. 2008). The argument, in short, was waived, is meritless and is harmless to boot.

D.

Tilghman raises two challenges to the district court's determination that he is a career offender under § 4B1.1 of the guidelines. One, Tilghman asks us "to review the district court's application of the Career Offender Statute." Br. at 26. But by failing to provide the court with *any* legal argument as to why the district court's application of § 4B1.1 was erroneous, he has waived any argument he might have. *See Catalan*, 499 F.3d at 606. Two, Tilghman argues that judicial fact finding about a defendant's prior convictions violates the Sixth Amendment. But *Almendarez-Torres v. United States*, 523 U.S. 224, 243–44 (1998), forecloses this argument.

IV.

For these reasons, we affirm Tilghman's conviction and sentence.